**Nell PENDLETON et al., Plaintiffs,**

v.

**James SCHLESINGER et al., Defendants.**

**Civ. A. No. 1689–73.**

United States District Court, District of Columbia.

Feb. 17, 1977.

---

David J. Cynamon, Covington & Burling, Washington, D. C., Roderic V. O. Boggs, Lawyers Committee for Civil Rights Under Law, Washington, D. C., for plaintiffs.

Joseph Guerrieri, Asst. U. S. Atty., Washington, D. C., for defendants.

## OPINION

JOHN LEWIS SMITH, Jr., District Judge.

██ Two black male and two black female employees[1] of Walter Reed Army Medical Center (WRAMC) have renewed their motion for certification as a class action in this suit brought under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Act of 1972. The proposed class consists of:

"[A]ll past, present and future black employees of Walter Reed Army Medical Center ('Walter Reed'), including approximately 1500 present black employees of Walter Reed; all past, present and future black applicants for employment at Walter Reed, and all black persons who applied or would have applied for similar employment at Walter Reed but for the defendants' discriminatory recruitment and practices."

In order to qualify for certification, plaintiffs must meet each of the four prerequisites set forth in subdivision (a) of Rule 23 of the Federal Rules of Civil Procedure: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Nell Pendleton began her employment at WRAMC in 1968 as a chemist,[2] GS–7. In 1970, she was promoted to the GS–9 level and beginning in 1972, served as chief EEO counsellor. Although the appointment was by its terms temporary, several extensions were granted, and in January, 1973 Ms. Pendleton still occupied that position. In this latter month she allegedly participated in a protest, against the direct orders of her superior, at the hospital's food service center. Following the protest, Ms. Pendleton was removed from her position as chief EEO counsellor and reassigned to her job as a chemist. It is noteworthy that plaintiff was alleged to have been chairman of an organization known as United Blacks Against Discrimination (UBAD), which planned and staged the protest.

Helen Martin began working at WRAMC in the fall of 1966. By 1972 she had been promoted from the GS–4 level (dictaphone transcriber) to GS–7 (medical records section). In October, 1972, she was appointed part-time EEO counsellor. Her subsequent termination was precipitated by her alleged involvement in the January, 1973 food service protest. Like Ms. Pendleton, Helen Martin was a member of UBAD.

Arthur Simpkins has performed janitorial duties at WRAMC since March, 1949. He has been rated at both WG2 and WG3 levels. He has received four Sustained Superior Performance Awards and concomitant stipends totalling $450.

James Douglas began his WRAMC career as a WG2 mess attendant in 1966. By 1973 he occupied the GS–5 Dietetic Technician position. Defendant WRAMC has characterized Mr. Douglas's employment record as "generally unsatisfactory with frequent tardiness, abuse of sick leaves, and incapacitating himself by reason of overindulgence with alcohol." This characterization is supported by the administrative record.

Essentially, it is the government's position that the dissimilarity of plaintiffs employment histories is cause for the Court, in its discretion, to deny the motion for certification. Of course, this contention must be measured against the four tests set forth in Rule 23(a).

The Court finds that plaintiffs satisfy the first two strictures. In the first instance, it would be impracticable to join all 1500

---

1. Julius Gross, Paul Davis, and Wilhemina Taylor have failed to file administrative complaints and are, therefore, not proper parties to this action. *See Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

2. Ms. Pendleton was awarded this position by virtue of high rank in her college class.

members of the proposed class. Consequently, the Court is satisfied that plaintiffs have met the numerousness requirement.

As for subsection (a)(2), the differences in the employment histories is no obstacle. In passing on commonality, it is not appropriate to examine the likeness or relation of the several claims of all members of the class and their representatives. The only proper inquiry is, as the language suggests, whether there is some aspect or feature of the claims which is common to all. In any complaint alleging across-the-board discrimination, this requirement will be met. *See, e. g., Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir. 1976); *Barnett v. W. T. Grant,* 518 F.2d 543, 10 FEP Cases 1057 (4th Cir. 1975); *Rich v. Martin Marietta,* 522 F.2d 333 (10th Cir. 1975); *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969); *Hall v. Werthan Bag Corp.,* 251 F.Supp. 184, 186 (N.D.Tenn.1966).

The third of the four tests in subdivision (a) is the typicality test. The precise meaning of this standard is difficult to discern. Indeed, case upon case interpreting the phrase either has equated it with the commonality requirement or has treated it as an aspect of the adequate representation requirement in (a)(4).[3] *See* J. Moore, Federal Practice ¶ 23.06–2; C. Wright and A. Miller, 7A Federal Practice and Procedure § 1764. Other courts have simply ignored the term. *See, e. g., Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir. 1968), *vacated* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). As Professor Moore reports:

"The difficulty in understanding the meaning of the 'typical' requirement has led courts to find compliance with little or no explanation, and the adverse party to concede it." Federal Practice at 23–327. Despite the apparent hesitancy of the courts to attach independent significance[4] to subsection (a)(3), there is no inherent conflict between this requirement and the objectives of Title VII and, therefore, no reason not to give it a formal reading.[5]

In plain terms, the typicality requirement is that the claims or defenses of the class "resemble" or "exhibit the essential characteristics of" those of the representatives.[6] Although the claims or defenses of the class members need not mirror each other, "Rule 23(a)(3) may be used to screen out class actions when the legal or factual position of the representatives is markedly different from that of other members, even though common issues of law or fact are raised." Federal Practice and Procedure § 1764. Viewed in this light, plaintiffs' motion for class certification must be denied.

The essential characteristics of the claims of Ms. Martin and Ms. Pendleton are their position as EEO counsellors, their membership in UBAD, and their participation in the food service protest. Underlying each claim is an implicit allegation that the two women were being disciplined in retaliation for their efforts to further equal employment opportunities for black employees at WRAMC. *Cf.* 42 U.S.C. § 2000e–3 (unlawful for private employer to make reprisals against person who has complained of the employer's discriminatory conduct).

---

**3.** Prior to 1966, the only occasion for examining typicality was in connection with the "spurious" class suit under old Rule 23(a). The present version was drafted in 1966. However, the Advisory Committee's 1966 comments fail to mention the new requirement.

**4.** This Court is by no means the first to give this subsection a meaning of its own in the Title VII area. *See, e. g., Taylor v. Safeway Stores, Inc.,* 524 F.2d 263 (10th Cir. 1975); *White v. Gates Rubber Company,* 53 F.R.D. 412 (D.Colo.1971). *See also,* Note, Federal Rule of

Civil Procedure 23(a)—Typicality Requirement for Class Actions Reviewed, 80 Dick.L.Rev. 835, 835 n.7 (1976).

**5.** As noted by a panel on the 6th Circuit, the trend has been to give the rule a "functional" as opposed to a formal reading. *Senter v. General Motors Corp., supra,* at 522, n.21.

**6.** *See* Webster's Third New International Dictionary, p. 2476.

These claims resemble neither those of Mr. Simpkins and Mr. Douglas nor, presumably, those of most of the members of the proposed class. In short, the factual position of Ms. Martin and Ms. Pendleton is so markedly different from that of their co-plaintiffs and fellow black employees at WRAMC that certification of the class would be inappropriate in these circumstances. Accordingly, plaintiffs' motion is denied.