Wallace **DUNCAN, Individually and on behalf of all others similarly situated**

v.

**STATE OF TENNESSEE Motor Pool Division of the Tennessee Department of General Services, the Department of General Services for the State of Tennessee.**

No. 77–3229–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

March 2, 1979.

---

24

Malcolm McCune, Joseph H. Johnston, Nashville, Tenn., for plaintiff.

R. Stephen Doughty, Asst. Atty. Gen. Nashville, Tenn., for defendants.

## MEMORANDUM

WISEMAN, District Judge.

Plaintiff, Wallace Duncan, has brought suit under 42 U.S.C. § 1981 and Title VII of

the Civil Rights Act of 1964, as amended by the Equal Employment Opportunities Act of 1972, 42 U.S.C. §§ 2000e et seq., charging his former employer, the General Services Department of the State of Tennessee, with racial discrimination in its employment practices.[1] This Court has jurisdiction under 28 U.S.C. § 1343(4) and 42 U.S.C. § 2000e–5(f). Plaintiff moved the Court to certify a plaintiff class of discriminatees under Rule 23(b)(2) of the Federal Rules of Civil Procedure. Defendant opposes certification of any class of plaintiffs.

Plaintiff was hired by the Tennessee Department of General Services[2] on June 3, 1974, as a mechanic in the Motor Pool Division, at a starting salary of $650 per month. In July of 1975, plaintiff was promoted to chief mechanic with a salary of $706 per month.[3] Plaintiff alleges that the position of chief mechanic was specially created for him. Although plaintiff's duties included supervising the night shift of employees, plaintiff asserts that the job was only a nominal supervisory position since he was not allowed to attend supervisory meetings nor was he accorded the benefits and responsibilities of other supervisors. Plaintiff charges that a shop supervisor's job was available in March of 1975 for which plaintiff was qualified but which was filled by a white man who had not previously been employed by the Department. Plaintiff testified that there were other supervisory positions available while he was employed by the Department and for which he was qualified,[4] including assistant shop foreman and another shop supervisor position, which were filled by white men. Although plaintiff admits that he did not officially apply for any of these positions, he explains that he was not afforded the opportunity to apply because notices of job vacancies were not posted or otherwise made known to employees. Until Department employees came under the aegis of the Civil Service Commission and its regulations in May of 1978, hiring and promotion throughout the Department was done by "word-of-mouth." In fact, plaintiff himself was hired by word-of-mouth.

Plaintiff filed a charge with the Equal Opportunity Employment Commission (EEOC) on October 24, 1975, charging racial discrimination by defendant in regard to hiring, segregated job classification, promotion, and salary adjustment. The EEOC found cause on the allegations of discriminatory promotion procedures and segregated job classifications. After receiving his right to sue letter from the EEOC, plaintiff instituted suit in this Court on May 6, 1977.

Plaintiff further alleges that he resigned from employment on August 19, 1977, after retaliatory actions taken against him by the Department, among them being required to

---

1. Plaintiff originally alleged an additional cause of action under 42 U.S.C. § 1983. After a hearing on defendant's motion for summary judgment, the Court granted summary judgment for defendant on plaintiff's cause of action under 42 U.S.C. § 1983, and summary judgment for defendant on plaintiff's cause of action under 42 U.S.C. § 1981 inasmuch as plaintiff prayed for damages under section 1981. At the same hearing, arguments were heard on the issue of class certification.

2. The Department of General Services basically provides support services for the State of Tennessee, administering, *inter alia*, purchases, personal and surplus properties, printing and motor vehicle facilities, food management, and public works. As of January 7, 1976, there were 759 employees of the Department throughout the State of Tennessee, 650 of whom were employed in Davidson County. There are nine divisions within the Department, including Administration, Federal Property Utilization, Motor Vehicle Management, Public Works, Printing, Postal Services, Food Services Management, Purchasing, and State Personal Property Utilization. Exhibit A to plaintiff's memorandum in response to defendant's motion to dismiss, Memorandum from Rene Todd, Field Representative for the Tennessee Commission for Human Development (TCHD), to Cornelius Jones, Executive Secretary, TCHD, dated January 7, 1976.

3. Prior to plaintiff's promotion, there were nine supervisory positions in the Motor Pool Division, all of which were filled by whites. Exhibit A, *supra* note 2.

4. According to the investigation of the TCHD subsequent to plaintiff's filing an EEOC charge, plaintiff was the only employee in the Motor Pool Division with a diploma in auto mechanics from an accredited state vocational school. Exhibit A, *supra* note 2.

perform unnecessary work and to perform the duties of his supervisor, who was not as skilled as plaintiff. Additionally, plaintiff charges that alterations on repair orders were made to reflect that plaintiff had done less work than was actually the case. Plaintiff filed an amended charge with the EEOC on October 8, 1977, and, on October 12, 1977, he filed an amended complaint in this Court, alleging further violations of his civil rights stemming from harassment and retaliation and culminating in his resignation of employment.

In his memorandum in support of the motion for class certification, plaintiff pointed out that some district court opinion could be cited to support practically any interpretation of a Title VII class action issue. Such an inconsistent state of the law may provide a windfall for a litigious plaintiffs' lawyer anxious to find precedent for his position, but it is extremely unhelpful to a district court in its attempt to ferret out the applicable law and supporting rationale. The difficulty is exacerbated by the fact that the majority of employment discrimination cases, particularly those that have been appealed, involve unskilled, unprofessional workers who can be easily bound together as a plaintiff class because their job descriptions are similar, if not identical, the skills required for their jobs are comparable, and the personnel policies of the company are clearly uniformly applied to all such employees.

Since the first Title VII cases in the 1960's, two developments have emerged. The first is that litigation, once centered around easily identifiable discrimination, has branched out into attacks on discrimination in less centralized employment situations that include diverse job classifications including skilled and professional positions. At the same time, employers have become cognizant of the requirements of the law and, if they discriminate, their discriminatory practices are more subtle and sophisticated. *See Rogers v. Equal Employment Opportunity Commission*, 454 F.2d 234, 238–39 (5th Cir. 1971); 1972 U.S.Code Cong. & Admin.News, 2143–44.

What becomes manifest from recent cases is that judicial treatment of employment discrimination class actions is far from consistent. The dictates of reason, logic, and judicial efficiency may ultimately play a definitive role in determination of whether or not a suit should be maintained as a class action and, if so, what should be the proper scope of such a class. In addition, a foremost consideration is the remedial purpose of Title VII and the congressional intent to eradicate a virulent form of discrimination brought about by the selection mechanisms of employers to preclude members of this society from equal employment opportunities. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 429, 918 S.Ct. 849, 852, 28 L.Ed.2d 158, 163 (1971); *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1333–34 (9th Cir. 1977); *Parham v. Southwestern Bell Tel. Co.*, 433 F.2d 421, 425 (8th Cir. 1970).

Plaintiff asks this Court to certify a broad class of discriminatees, including all black employees who have been denied, or may be denied, equal employment opportunities by the Department of General Services. In plaintiff's original complaint, he charged that defendant had discriminated in the following ways:

1. By maintaining racially segregated job classifications;

2. By denying to blacks equal employment opportunities;

3. By failing or refusing to hire blacks on an equal basis with whites;

4. By failing or refusing to hire, recruit, and promote blacks on an equal basis with whites;

5. By failing or refusing to transfer blacks to positions on an equal basis with whites;

6. By maintaining a racially discriminatory program with respect to fulltime employment and recognition of positions and qualifications of employees; and

7. By discriminating according to race against employees who work fulltime.

In his supplemental memorandum in support of class certification, plaintiff appropriately condensed his allegations against defendant to denial to blacks of positions, promotions, pay raises, and equal working conditions on an equal basis with whites. It is these charges on which the Court will concentrate in determining the issues about which plaintiff can represent a class.

Defendant urges the Court to decline certification primarily because, the State argues, plaintiff has not shown that he is typical of the class he seeks to represent. Both parties have furnished the Court with briefs and supplemental briefs in support of their respective positions, and the Court has held an evidentiary hearing at which time plaintiff introduced exhibits providing statistical information that purported to show that black employees within the defendant Department have been relegated to low paying jobs requiring minimal skills. Defendant vigorously attacks the validity and utility of those statistics.

Although the district court has wide discretion in determining whether or not to certify a class, the Court must carefully scrutinize plaintiff's allegations to insure that the requisites of Rule 23(a) and (b) have been met. *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977); *Gay v. Waiters' & Dairy Lunchmen's Union, supra*, at 1332. Despite the fact that Title VII cases are uniquely suited for class action treatment, *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340 (10th Cir. 1975); *Huff v. N.D. Cass Co.*, 485 F.2d 710, 713–14 (5th Cir. 1973); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir. 1968), not every employment discrimination case should be so treated, and class certification clearly should not be automatically granted. *Senter v. General Motors Corp.*, 532 F.2d 511, 520 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Lim v. Citizens Sav. & Loan Ass'n*, 430 F.Supp. 802, 807 (N.D.Cal.1976); *Kinsey v. Legg, Mason & Co., Inc.*, 60 F.R.D. 91, 98 (D.D.C.1973), *rev'd on other grounds sub nom. Kinsey v. First Regional Sec., Inc.*, 181 U.S.App.D.C. 207, 557 F.2d 830 (D.C.Cir.

1977). It is plaintiff's burden to show the Court that the requirements of Rule 23 are met. *Price v. Lucky Stores, Inc.*, 501 F.2d 1177, 1179 (9th Cir. 1974); *Poindexter v. Teubert*, 462 F.2d 1096, 1097 (4th Cir. 1972); *Blankenship v. Wometco Blue Circle, Inc.*, 59 F.R.D. 308, 309 (E.D.Tenn.1972). Mere parroting of the provisions of Rule 23 is insufficient. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1312 (9th Cir. 1977).

Particularly if the class, if certified, would fall within the Rule 23(b)(2) category, considerations of res judicata are paramount. Although an improperly certified class can be collaterally challenged in an attack on the judgment binding absent class members, the risk of foreclosing future relief to absent plaintiffs by improvident class certification should not be glossed over by the Court or the parties. *See Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1127 (5th Cir. 1969) (Godbold, J., concurring); *Harriss v. Pan Am. World Airways, Inc.*, 74 F.R.D. 24, 43 (N.D.Cal.1977). In addition, although Title VII can be an extremely effective vehicle for eliminating, or at least restraining, discriminatory employment practices, it can be equally effective as a vehicle by which a disgruntled employee can harass an employer who has fairly and justifiably denied him a job opportunity. *See Richerson v. Fargo*, 61 F.R.D. 641, 643 (E.D.Pa.1974), *vacated*, 64 F.R.D. 393 (E.D.Pa.1974); *Arey v. Providence Hosp.*, 55 F.R.D. 62, 68 (D.D.C.1972).

On the other hand, it is to the Court's benefit, as well as that of the parties, to adjudicate one meritorious case, albeit probably lengthy and complicated, rather than myriad cases brought by individual plaintiffs alleging the same or similar discriminatory treatment. Even if there would be no future cases brought by potential class members, the rationale for class action remains because other class members may not have the temerity to bring suit for fear of reprisal and/or termination of their employment. *See Mack v. General Electric Co.*, 329 F.Supp. 72, 76 (E.D.Pa.1971). Although lack of courage to bring suit may

have been more prevalent in the 1960's when employers were less aware of the rights of their minority workers and had more economic control over the unskilled and uneducated employees, it cannot be gainsaid that contemporary employees have nothing to fear from attacking what they may perceive to be discriminatory practices. Whether the fear is justifiable or not is not the question; a reluctance of workers to challenge their employers through the judicial process is inevitable.

The Court is, therefore, caught on the horns of a dilemma by wanting to protect absent employees from a binding judgment, to safeguard employers against unreasonable harassment, and, at the same time, uphold the rights of timorous discriminatees. The difficulty is compounded by the opaque nature of the caselaw, which often lends little guidance.

■ If it had not been obvious before, the United States Supreme Court made it clear that the requirements of Rule 23 should not be flippantly considered and that they deserve careful attention in Title VII cases. *East Texas Motor Freight Sys., Inc. v. Rodriquez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453, 463 (1977). A court is constrained in its inquiry only by the prohibition against delving into the merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732, 748–49 (1974); *Huff v. N.D. Cass Co.*, 485 F.2d 710, 712 (5th Cir. 1973).

■ For the reasons discussed below, the Court will conditionally certify this case as a class action but will limit the scope of the class from that which plaintiff has proposed.

■ *Plaintiff's Membership in the Proposed Class.* In addition to the necessity of a definite, cognizable class of plaintiffs,

plaintiff must be a member of the class he seeks to represent. This requirement has been given increased vitality by the United States Supreme Court in *East Texas Motor Freight Sys., Inc. v. Rodriquez, supra*, 431 U.S. at 403, 97 S.Ct. at 1896, 52 L.Ed.2d at 462.[5] The source of this rule is, like almost all aspects of Title VII class actions, uncertain. The Court of Appeals for the Sixth Circuit has viewed its origin in the requirement of standing, *Senter v. General Motors Corp., supra; accord, Satterwhite v. City of Greenville*, 557 F.2d 414 (5th Cir. 1977), *vacated*, 578 F.2d 987 (5th Cir. 1978), whereas other courts have considered it a part of the requirement of adequate representation under Rule 23(a)(4), *see Wright v. Stone Container Corp.*, 524 F.2d 1058, 1062–63 (8th Cir. 1975), part of the commonality requirement of Rule 23(a)(2), *see Harriss v. Pan Am. World Airways, Inc.*, 74 F.R.D. 24, 39–40 (N.D.Cal.1977), or a separate requirement of Rule 23(a), *see Barrett v. United States Civil Serv. Comm'n*, 69 F.R.D. 544, 554 (D.D.C.1975). It is apparent that plaintiff was a black employee of the defendant employer and, as such, was subject to the employment practices and policies of the defendant and has a personal stake in the outcome of this litigation. Other factors involved in this consideration will be discussed in terms of commonality under Rule 23(a)(2) and typicality under Rule 23(a)(3).

■ *Rule 23(a)(1)* : The class must be so numerous that joinder of all members is impracticable. In his memorandum in support of class certification, plaintiff stated that, as of January 9, 1977, there were approximately 183 black employees in the Department of General Services. According to the EEOC investigation, there were approximately 162 black employees in the Department of General Services as of Janu-

---

5. In *Rodriquez*, the Supreme Court reiterated its previous holdings that a class representative must be a member of the class and possess the same interest and suffer the same injury as the class members. If a plaintiff has not been injured by the alleged discriminatory practices, he cannot represent a class of discriminatees who allegedly were injured. *Id.* The implications of this holding are not totally clear when class certification is determined prior to trial rather than after a trial on the merits in which the named plaintiffs were unsuccessful, as was the case in *Rodriquez*. *See* discussion at note 11 *infra*.

ary 1, 1976.[6] Since plaintiff has made broad allegations of department wide discrimination, joinder is impracticable and the numerosity requirement is met.

*Rule 23(a)(2)*: There must be questions of law or fact common to the class. Many courts have followed the lead of the Court of Appeals for the Fifth Circuit, which early adopted the practice of finding commonality when a representative plaintiff alleged a general pattern and practice of discrimination or, as it has come to be known, "across the board" discrimination in his employment.[7] *Carr v. Conoco Plastics, Inc.*, 423 F.2d 57, 63 (5th Cir.), *cert. denied*, 400 U.S. 951, 91 S.Ct. 241, 27 L.Ed.2d 257 (1970); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1124 (5th Cir. 1969); *Jenkins v. United Gas Corp.*, 400 F.2d 28, 34 (5th Cir. 1968). *See also United States Fidelity & Guaranty Co. v. Lord*, 585 F.2d 860, 871 (8th Cir. 1978) (district court opinion published as addendum); *Senter v. General Motors Corp., supra; Barnett v. W.T. Grant Co.*, 518 F.2d 543, 547–48 (4th Cir. 1975); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719–20 (7th Cir. 1969).[8] Interestingly enough, the forerunner of this long line of cases was a decision from this Court in which Judge Gray spoke of the Damoclean threat of racial discrimination forming a common thread of issues of fact among class plaintiffs. *Hall v. Werthan Bag Corp.*, 251 F.Supp. 184, 186 (M.D.Tenn.1966). The common question presented in such a case is the alleged discriminatory treatment of black employees by the employer's practices and policies, whether they be neutral or blatantly discriminatory on their face.

A general course of discrimination will normally affect individual discriminatees in different ways. *Gibson v. Local 40, Supercargoes & Checkers*, 543 F.2d 1259, 1264 (9th Cir. 1976); *Barnett v. W.T. Grant*, 518 F.2d 543, 548 (4th Cir. 1975). Such variations are particularly apparent in employment discrimination cases, which inevitably involve different circumstances regarding varying qualifications, aptitudes, seniority, and prior work records. *Mack v. General Electric Co.*, 329 F.Supp. 72, 74–75 (E.D.Pa. 1971). These factors cannot preclude class treatment because otherwise no employment discrimination case could be capable of class treatment despite the common thread of discrimination. *See Senter, supra*, at 524; *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340 (10th Cir. 1975).

Some courts have determined that across the board allegations are not sufficient when the levels of expertise required by different job classifications of employees vary considerably. *See Peterson v. Albert M. Bender Co., Inc.*, 75 F.R.D. 661, 665–66 (N.D.Cal.1977); *Harriss v. Pan Am. World Airways, Inc.*, 74 F.R.D. 24, 55–56 (N.D.Cal. 1977). *See also Kinsey v. Legg, Mason & Co., Inc.*, 60 F.R.D. 91, 99–100 (D.D.C.1973), *rev'd on other grounds sub nom. Kinsey v. First Regional Sec., Inc.*, 181 U.S.App.D.C. 207, 557 F.2d 830 (D.C. Cir. 1977). While it is clear that, in an employment situation, each personnel decision involves some subjectivity on the part of the employer, and the circumstances forming the basis of plaintiff's complaint are rarely identical to the situation of the members of the class, plaintiff's claims cannot be entirely unique to him. Where the line on the continuum

---

**6.** Exhibit A, *supra* note 2. The memorandum was dated January 7, 1978, and on the cover page reported approximately 624 employees of the Department, 26 percent of whom were black. On the second page of the memorandum, Mr. Todd reports 759 positions in the Department. It is not clear from this memorandum report how many employees there were in the Department on what dates and how many of these employees were black. For the purposes of numerosity, this lack of clarity is irrelevant because it is obvious that there were well over one hundred black employees during the pertinent time periods.

**7.** This across the board approach is not uniformly followed, however, and some courts have specifically rejected the analysis developed by the Fifth Circuit. *See White v. Gates Rubber Co.*, 53 F.R.D. 412, 413 (D.Colo.1971); *Hyatt v. United Aircraft Corp.*, 50 F.R.D. 242, 248 (D.Conn.1970).

**8.** Some courts have held that across the board allegations satisfy both the requirements of typicality and commonality. *See, e. g., Mack v. General Electric Co.*, 329 F.Supp. 72, 76 (E.D. Pa.1971).

from identical complaints to obviously atypical complaints should be drawn to bar class treatment is widely disputed.

Defendant is correct in asserting that some courts seem to be taking a more restrictive view of commonality and typicality, demanding that the representative plaintiff's job classification or position be identical to those of the class members. *See, e.g., Plater v. Boyle,* 17 E.P.D. 6467, ¶ 8471 (D.D.C.1978); *Mays v. Motorola, Inc.,* 14 E.P.D. 5315, ¶ 7676 (N.D.Ill.1977); *Dickerson v. United States Steel Corp.,* 13 E.P.D. 6034, ¶ 11,311 (E.D.Pa.1976), which defendant has called to the attention of this Court. By taking such a strict position, courts can easily decide that the issues are only common to and the representative is only typical of a few members of the proposed class and that, therefore, the numerosity requirement of Rule 23(a)(1) is not met. It is this "divide and conquer" approach that defendant is advocating that this Court adopt. Even if there were over one hundred black mechanics employed by the Motor Pool Division, none of whom had been promoted to existing supervisory positions, and there were no dispute about plaintiff's having satisfied the typicality and commonality requirements, a judicial inquiry into the qualifications, job experience, and ability of each black mechanic would be necessary to determine whether or not he had been denied employment opportunities because of his race. Additionally, the personnel decisions of the employer regarding each black mechanic would have to be similarly analyzed. Defendant suggests that the task would be immeasurably complicated if, instead of numerous black mechanics, the black employees were scattered among many different positions. The Court is unable to agree that the increased difficulty, if any, should preclude class treatment.

▮ Defendant seems to want this Court to adopt the approach of the District Court for the Northern District of California, which apparently approves of class treatment in nonprofessional, unskilled employment situations but refuses to use the same rationale when dealing with more sophisticated employment environments in which diverse classifications, including professional and skilled jobs, exist. *See Peterson v. Albert M. Bender Co., Inc., supra,* at 665. *See also Harriss v. Pan Am. World Airways, Inc., supra.* Realizing that every employment decision involves subjective considerations and an inquiry into personnel decisions necessarily includes a knowledge of job requisites as well as each employee's individual qualifications, it is not clear why a court would be faced with a more complicated factual situation when such diverse job classifications are involved. *See Women's Committee v. National Broadcasting Co.,* 71 F.R.D. 666, 669–70 (S.D.N.Y.1976). Employers certainly should not be allowed to immunize themselves from class actions simply because they hire skilled or professional employees. *See Lo Re v. Chase Manhattan Corp.,* 431 F.Supp. 189, 197 (S.D.N.Y. 1977); *Presseisen v. Swarthmore College,* 71 F.R.D. 34, 43–44 (E.D.Pa.1976).

▮ It is the opinion of this Court that the pervasive practice and/or policy of racial discrimination, as alleged by Mr. Duncan, satisfies the requirement of commonality.

*Rule 23(a)(3)* : The claims or defenses of the representative parties must be typical of the claims or defenses of the class. This requirement is the most confusing part of Rule 23 and certainly the most troublesome presented by this case. To a large extent, defendant has concentrated his arguments in an attempt to refute plaintiff's contention that his complaints are typical of those of the putative plaintiff class. Some courts have assumed that (a)(3) has no independent meaning and have treated the typicality requirement as identical to (a)(2). *See Presseisen v. Swarthmore College,* 71 F.R.D. 34, 42–44 (E.D.Pa.1976); *Grogan v. American Brands, Inc.,* 70 F.R.D. 579, 581 (M.D.N.C.1976); *Piva v. Xerox Corp.,* 70 F.R.D. 378, 385 (N.D.Cal.1975); *Mack v. General Electric Co.,* 329 F.Supp. 72, 76 (E.D.Pa.1971). Other courts have appeared to treat (a)(2) and (a)(3) separately but have merged the concepts in the very process of

defining them. For instance, it has been said that typicality is satisfied by allegations of discrimination, manifested in particularized ways, if such discrimination is due to a common policy. *I.M.A.G.E. v. Bailar*, 78 F.R.D. 549, 555 (N.D.Cal.1978). This articulation of the definition of typicality obviously does little more than elaborate on the definition of commonality.

In contrast, some courts apparently believe that the factors underlying (a)(3) are synonymous with those of (a)(4). *See Capaci v. Katz & Besthoff, Inc.*, 72 F.R.D. 71, 76–77 (E.D.La.1976); *Marshall v. Electric Hose & Rubber Co.*, 68 F.R.D. 287, 291–92 (D.Del.1975); *Richmond Black Police Officers Ass'n v. City of Richmond*, 386 F.Supp. 151, 158 (E.D.Va.1974). Other courts have treated (a)(3) within a consideration of standing. *See Senter v. General Motors, supra.*

There is no consistent definition of typicality even when given meaning independent from the other requirements of Rule 23. Some courts speak in general terms of the necessity of a nexus between plaintiff's claims and the interests of the proposed class. *Wells v. Ramsay, Scarlett & Co., Inc.*, 506 F.2d 436 (5th Cir. 1975); *Peterson v. Albert Bender Co., Inc.*, 75 F.R.D. 661, 666 (N.D.Cal.1977). Others allow class treatment if the claims of the plaintiff resemble the class claims, *see Pendleton v. Schlesinger*, 73 F.R.D. 506, 509 (D.D.C.1977), and if the members of the class will be benefited by a judgment in favor of the named plaintiff. *Gill v. Monroe County Dep't of Social Servs.*, 79 F.R.D. 316, 326 (W.D.N.Y.1978). Some courts consider the issue of job qualifications and diverse job classifications as part of the typicality inquiry, *see Kinsey v. Legg, Mason & Co., Inc., supra*, while others, including this Court, view such concerns as enveloped by (a)(2).

One of the most restrictive approaches to typicality is the requirement that the named plaintiff make a showing that the class is more than hypothetical by proving the presence of other complaints. *Wright v. Stone Container Corp.*, 524 F.2d 1058, 1062 (8th Cir. 1975); *Brown v. J.P. Allen Co.*, 79 F.R.D. 32, 35 (N.D.Ga.1978); *Taylor v. Safeway Stores, Inc.*, 333 F.Supp. 83, 87 (D.Colo.1971), *approved in Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 269–71 (10th Cir. 1975); *White v. Gates Rubber Co.*, 53 F.R.D. 412, 415 (D.Colo.1971).[9] This position appears to conflict with the long acknowledged remedial purpose of Title VII and a sensitivity to and awareness of the fear that an employer can generate in his employees to discourage complaints. Presumably this approach does not involve any analysis of the merits of the case as prohibited by *Eisen v. Carlisle & Jacquelin, supra*, but only looks to see if there have been others who have complained, no matter how frivolous or meritorious these complaints may be. At least one court has gone beyond the requirement that there be a showing of other complaints to a rule that the complaints be identical. *Smith v. North Am. Rockwell Corp.*, 50 F.R.D. 515, 525 (N.D.Okl.1970).

As previously discussed in the context of commonality, the only consistent principle throughout employment discrimination cases is that a representative plaintiff's claims cannot be unique to him. If a plaintiff's employment history, characteristics, qualifications, or activities are obviously anomalous, he cannot represent a class. *See Martin v. Easton Pub. Co.*, 73 F.R.D. 678, 680–81 (E.D.Pa.1977); *Pendleton v. Schlesinger*, 73 F.R.D. 506, 509–10 (D.D.C. 1977); *Fannie v. Chamberlain Mfg. Corp.*, 445 F.Supp. 65, 71–72 (W.D.Pa.1977); *Odom v. United States Home Corp.*, 76 F.R.D. 381 (S.D.Tex.1975).[10] Similarly, if the employ-

---

**9.** For a criticism of this position, see 7 C. Wright & A. Miller, *Federal Practice and Procedure* ¶ 1764, at 612–13. *See also* 4 H. Newberg, *Class Actions* ¶ 7983, at 1300.

**10.** If the differences in conditions of employment would impair the effectiveness of class claims, it is obvious under Rule 23(a)(4) that employees should not be grouped together in the same class. *See Gibson v. Local 40, Supercargoes & Checkers*, 543 F.2d 1259, 1265 & n.8 (9th Cir. 1976).

er's treatment of the representative plaintiff, even if violative of Title VII and/or 42 U.S.C. § 1981, were aimed solely at the named plaintiff and there is no hint that such discriminatory treatment has ever affected any other employees, class certification is wholly inappropriate. *See Jacobs v. Martin Sweets Co.*, 550 F.2d 364 (6th Cir.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977); *Tarvesian v. Carr Div. of TRW, Inc.*, 407 F.Supp. 336 (D.Mass. 1976). The facts of one case will serve to illustrate when it is obvious a court should deny certification because of lack of typicality. In *Tarvesian v. Carr Div. of TRW, Inc., supra,* a plaintiff of Armenian ancestry moved to represent a class of all black, female, Jewish, Spanish-surnamed, and Armenian employees of defendant employer. Plaintiff had allegedly been informed by his employer that he had no future with the company because of his ethnic origin, and his employer had put false information in job reference letters to other employers. These charges were unique to this plaintiff, and plaintiff had not alleged any factual basis for pervasive discriminatory practices touching other minority employees. The court properly denied his status as class representative.

 Wallace Duncan has not alleged instances of discrimination unique to him as Mr. Tarvesian did. The circumstances of Mr. Duncan's employment were, to some extent, individual in that he received a promotion to chief mechanic. Defendant contends that because plaintiff was hired and subsequently promoted by defendant, he is atypical not only of those applicants who were not hired but also of those employees who were not promoted. The Court cannot agree with defendant's assertion that plaintiff cannot represent those employees who were not promoted. The whole thrust of plaintiff's complaint is the fact that he was not promoted as he would have been had he been white. The allegation that plaintiff was indeed promoted to a specially created position that did not encompass the benefits and responsibilities of existing supervisory positions is the essence of his complaint and does not bar him from representing those who, like him, were not promoted into existing supervisory positions.

Plaintiff's ability to represent unsuccessful applicants is more questionable. There is no unanimity of judicial treatment of applicants when a plaintiff, who was hired by the defendant employer, seeks to represent a class including unsuccessful applicants for employment. Generally, those courts that do exclude applicants from class membership do not examine contradictory caselaw, give persuasive reasons, or engage in very extensive logical analysis of why applicants should be excluded.

Some courts have precluded applicants from class status because the representative plaintiff is not a member of the class of applicants. *See Barrett v. United States Civil Serv. Comm'n,* 69 F.R.D. 544, 554 (D.D.C.1975); *Blankenship v. Wometco Blue Circle, Inc.*, 59 F.R.D. 308, 309 (E.D. Tenn.1972), or, as a corollary, because the representative does not have standing, *see Grogan v. American Brands, Inc.*, 70 F.R.D. 579, 581 (M.D.N.C.1976). Other courts have declined to include applicants in the class based on lack of typicality and adequate representation of the named plaintiff, *Chambers v. Franchise Realty Interstate Corp.*, 12 F.E.P. Cases 1817, 1820 (N.D. Ohio 1976), or solely on the basis of lack of adequate representation, *Richmond Black Police Officers Ass'n v. City of Richmond,* 386 F.Supp. 151, 157 (E.D.Va.1974).

On the other hand, a comparable number of courts have allowed a plaintiff, who was employed by defendant, to represent unsuccessful job applicants. *See, e.g., Long v. Sapp*, 502 F.2d 34, 43 (5th Cir. 1974); *Black Grievance Comm. v. Philadelphia Electric Co.*, 79 F.R.D. 98, 109–10 (E.D.Pa.1978); *Parker v. Bell Helicopter Co.*, 78 F.R.D. 507, 513–14 (N.D.Tex.1978); *Piva v. Xerox Corp.*, 70 F.R.D. 378, 388–89 (N.D.Cal.1976); *McMiller v. Bird*, 68 F.R.D. 339, 341–42 (W.D.La.1975).

Since the United States Supreme Court decision of *East Texas Motor Freight Co. v. Rodriquez, supra,* some courts have determined that applicants cannot be included in

a class represented only by present or past employees.[11] *See, e.g., Brown v. J.P. Allen Co.,* 79 F.R.D. 32, 35 (N.D.Ga.1978). This interpretation of *Rodriquez* has, however, been disputed. *See Parker v. Bell Helicopter, supra; Arnett v. American Nat'l Red Cross,* 78 F.R.D. 73, 77 (D.D.C.1978).

In addition to the lack of consistency among courts in their treatment of applicants, individual district courts have vacillated on the issue. Compare *Barrett v. United States Civil Serv. Comm'n,* 69 F.R.D. 544, 554 (D.D.C.1975), in which the court denied applicants class status, to *Arnett v. American Nat'l Red Cross, supra,* and *Bachman v. Collier,* 73 F.R.D. 300 (D.D.C.1976), in which the same court at later dates included applicants in the proposed class.[12] Also compare *Bateman v. Retail Credit Co.,* 320 F.Supp. 1115, 1116 (N.D.Ga. 1970), in which the court allowed applicants to be included in the class, with the more recent cases of *Freeman v. Motor Convoy,* 68 F.R.D. 196 (N.D.Ga.1974), and *Brown v. J.P. Allen Co., supra,* in which the same court refused to allow class status to applicants. Finally, compare *Dickerson v. United States Steel Corp.,* 13 E.P.D. 6034, ¶ 11,-311, at 6036 (E.D.Pa.1976), in which the court refused to include applicants, and the case of *Black Grievance Comm. v. Philadelphia Electric Co., supra,* in which the same court later included applicants in a plaintiff class.

The Court of Appeals for the Sixth Circuit has at least intimated that applicants may not properly be included in a class represented by former and/or present employees. *Alexander v. Aero Lodge No. 735, International Association of Machinists & Aerospace Workers,* 565 F.2d 1364, 1369 (6th Cir. 1977), *cert. denied,* 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978); *Equal Employment Opportunity Comm'n v. De-troit Edison Co.,* 515 F.2d 301, 311 (6th Cir. 1975), *vacated and remanded on other grounds,* 431 U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977). *But see Roberts v. Union Co.,* 487 F.2d 387, 389 (6th Cir. 1973).[13]

■ Although it is possible, as the Sixth Circuit said in *Equal Employment Opportunity Comm'n v. Detroit Edison, supra,*[14] that there may be antagonistic interests between applicants and other class members, the better approach to the consideration of inclusion of applicants under (a)(4) seems to be to allow inclusion unless there is some showing that there may be potential conflicts. *See Wofford v. Safeway Stores, Inc.,* 78 F.R.D. 460, 491–92 (N.D.Cal.1978). Unless such conflicts are apparent, it appears more reasonable to consider the status of applicants within a discussion of typicality under Rule 23(a)(3).

Plaintiff has alleged that, prior to the defendant's coverage under the Civil Service System, defendant primarily used the method of word of mouth hiring to recruit and hire new employees. As invidious as this procedure may have been, especially if it served to perpetuate existing discriminatory employment patterns, *Franks v. Bowman Transp. Co.,* 495 F.2d 398, 419 (5th Cir. 1974), *rev'd on other grounds,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Reed v. Arlington Hotel Co., Inc.,* 476 F.2d 721, 724 (8th Cir.), *cert. denied,* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973); *United States v. Georgia Power Co.,* 474 F.2d 906, 925–26 (5th Cir. 1973), plaintiff himself was hired by this method. Additionally, in denying plaintiff cause on the charge of discrimination in hiring, the EEOC found that there was no statistical disparity between the number of blacks hired by the Department and the number of blacks in the labor pool. There is no indication from plaintiff's

---

**11.** See note 5 *supra* for a discussion of the *Rodriquez* holding.

**12.** The *Bachman* court specifically criticized its earlier holding in *Barrett. Bachman v. Collier, supra,* at 305 n.1.

**13.** In *Roberts,* the Sixth Circuit remanded the case to the district court, which had denied class certification, to consider, *inter alia,* whether or not applicants should be included in the proposed class. *Roberts v. Union Co., supra,* at 389.

**14.** *Accord, Dickerson v. United States Steel Corp.,* 13 E.P.D. 6034, ¶ 11,311, at 6036.

statistics, from plaintiff's own experience, as he has related it, or from any other source, that there is a class of black applicants that plaintiff could represent.

 If there were indications of applicants for employment who had been discriminated against, the Court would be less reluctant to include them in the class, but, apart from the questionable hiring practices, there are no such indications, and the Court will not rely solely on the allegations in plaintiff's complaint that no more than hypothesize the existence of applicant-discriminatees. The Court is of the opinion that it is not proper to take a restrictive view of Title VII class actions by denying certification if plaintiff does not make a showing of other employees with tangible complaints, but if plaintiff has not been injured by the alleged discriminatory hiring practices and, in addition, does not come forward with any showing of applicants who have been discriminated against, it does not seem appropriate to broaden the class unnecessarily. It is true that there may be unsuccessful job applicants who are unaware that they were denied employment because of a racially discriminatory policy and that, therefore, they may never come forward. This Court, however, feels that plaintiff must make some showing, however tenuous, that there are discriminatees in this category. Allegation of potentially discriminatory hiring practices by itself is not sufficient.

 Another consideration, although not controlling, in determining whether or not applicants should be included in the class is that of judicial administration and manageability of this case. Manageability is not normally viewed as a factor in (b)(2) classes although it is obviously a primary factor in (b)(3) classes. Some courts have,

however, considered this issue when determining the geographic scope of a (b)(2) class. *Hill v. American Airlines*, 479 F.2d 1057, 1059 (5th Cir. 1973); *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 485 (N.D. Cal.1978); *Piva v. Xerox Corp.*, 70 F.R.D. 378, 388–89 (N.D.Cal.1976); *Hyatt v. United Aircraft Corp.*, 50 F.R.D. 242, 247–48 (D.Conn.1970); *Moss v. Lane Co.*, 50 F.R.D. 122, 126 (W.D.Va.1970). There seems to be no reason why consideration of manageability should be limited to cases in which plaintiffs have alleged geographically extensive classes; if manageability is an appropriate concern when there are allegations of a nationwide (b)(2) class, it should be proper to consider for other reasons in a (b)(2) class, especially when, as here, plaintiff has not made any showing that there are any potential applicant-discriminatees.[15]

Since the Court is conditionally certifying the class under Rule 23(c)(1), the scope can be modified prior to judgment in this case. If plaintiff is able to carry his burden as to applicants at a later date, this order can be amended to include applicants in the class at that time.

 It is clear that, although plaintiff is no longer an employee of the defendant Department, he can still represent a class of past and present employees. *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1030–31 (6th Cir. 1977); *Reed v. Arlington Hotel Co.*, 476 F.2d 721, 723 (8th Cir.), *cert. denied*, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1124 (5th Cir. 1969). In fact, a former employee may be a better representative since he will be free of any coercive influence by the employer, and there will be no chance of collusion between him and his former employer. *Wetzel v. Liberty Mutual Ins. Co.*,

---

**15.** The District Court for the Northern District of Illinois has specifically incorporated the factor of manageability expressed in Rule 23(b)(3) into a consideration of certification of a (b)(2) class. *Mays v. Motorola, Inc.*, 14 E.P.D. 5315, ¶ 7676, at 5316. The District Court for the Western District of Pennsylvania, however, has stated that the concept of manageability, which includes a concern with plaintiff's ability to

present the issues properly and conduct discovery within reasonable time periods with reasonable financial resources, is encompassed within the criteria of Rule 23(a)(4) in a (b)(2) case, whereas the idea of manageability under (b)(3) goes beyond the requirement of (a)(4) and focuses on the appropriate relief. *Karan v. Nabisco, Inc.*, 78 F.R.D. 388, 406 & n.15 (W.D. Pa.1978).

508 F.2d 239, 247 (3rd Cir. 1975); *Mack v. General Electric Co.*, 329 F.Supp. 72, 76 (E.D.Pa.1971).

■ By far the most problematic of defendant's objections to finding typicality is the state's assertion that each division within the Department is autonomous in terms of personnel decisions. If there is absolute decentralization in terms of employment and each division is entirely autonomous, it would not be appropriate to certify a class extending beyond the employees of a division in which the representative plaintiff is or was employed. That employment structure would be comparable to several separately owned companies that would clearly be improper defendants if joined together by a plaintiff who had only been employed by one company.

■ The Department of General Services is not, however, so obviously comprised of autonomous divisions. In the state's first brief in opposition to class certification, defendant stated that the Department and Commissioner of General Services played "an extremely limited role" in personnel decisions, leaving the divisions with "a great deal of autonomy." In the state's supplemental brief in opposition to class certification, defendant referred to the testimony at the hearing as showing that each division had "virtual" autonomy. It appears that the Commissioner of the Department retained ultimate responsibility or power over division decisions, and proof at this point does not so clearly show that employment practices and personnel decisions within each division are totally autonomous so as to preclude class treatment. *See Arnett v. American Nat'l Red Cross,* 78 F.R.D. 73, 76 (D.D.C.1978). There remains at least the possibility that there were general Department hiring practices or policies that overrode division autonomy. *See Ste Marie v. Eastern R.R. Ass'n,* 72 F.R.D. 443, 448 (S.D.N.Y.1976); *Fujita v. Sumitomo Bank,* 70 F.R.D. 406, 410 (N.D.Cal.1975). If, during the progression of this case, it be-

comes irrefutable that the Department had absolutely no control over division personnel decisions and the divisions were not implementing any departmental personnel policies, the Court will decertify the class.

Having determined that plaintiff can represent a class of black employees who have allegedly been denied promotional opportunities and that he cannot represent those blacks who may have been affected by defendant's allegedly discriminatory hiring and recruiting practices, the Court will consider the propriety of class treatment as to the other issues plaintiff has raised. The Court finds that there is no hint in the record that blacks have been denied pay raises when white employees have been given such raises. Plaintiff himself received pay raises while employed and, during his tenure, was one of the highest paid blacks in the Department.[16] Plaintiff's allegations that he performed work beyond that required by his job description but that he did not receive pay commensurate with his performance or comparable to that received by white employees performing the same or similar work are relevant to his charge of unequal working conditions, but these circumstances appear to be unique to plaintiff. These allegations also appear to be encompassed in the issue of discriminatory practices regarding promotion and retaliatory actions taken against plaintiff after he filed his original EEOC charge. Because plaintiff has not alleged other instances of discrimination in this area, the Court will exclude these issues from class treatment and will examine only discriminatory promotion practices against the class of black employees.

Similarly, there is no indication of any discriminatory transfer policy, and plaintiff never attempted or otherwise expressed any desire to transfer, nor is there any hint, apart from plaintiff's bald assertions in his complaint, that there was discrimination

---

16. When plaintiff began work, he received a starting salary of $620 per month. Within two and one-half years he was making a salary of $823, after having received four raises. Exhibit A, *supra* note 2.

against employees who worked fulltime.[17] Plaintiff's ambiguous charge that defendant failed to recognize "positions and qualifications of employees" will be incorporated into the issue of discriminatory promotion policies. Plaintiff's charge that defendant maintained racially segregated job classifications, to the extent that such a practice relates to promotions, will be included, but will be excluded as it relates to anything else.

Plaintiff has tendered numerous charts, graphs, and compilations of statistical information that he believes show the existence of a discriminatory policy by defendant and its attendant effects on black employees within the Department. In his original memorandum in support of class certification, plaintiff noted that most of the statistical information presented is applicable to the merits of the case rather than to a determination of class certification. The Court agrees with this analysis.

For whatever reason these statistics are potentially useful, defendant has convincingly argued that they lack validity. Defendant contends that the statistics are not helpful because, although they indicate a disproportionate number of blacks employed in lower paying positions in the Department, they do not take into account the qualifications of the black employees so that it is just as reasonable to suggest that the Department overutilizes blacks in lower paying jobs than it is to infer that blacks are discriminatorily precluded from promotional opportunities. Further, defendant contests plaintiff's categorizations of job classifications and the fact that plaintiff has used statistics from the Tennessee Data for Affirmative Action Plans[18] that break down job categories in the labor pool into fifteen (15) types, whereas in his charts, plaintiff has described the defendant De-

partment as comprised of eight (8) job categories. Defendant, therefore, argues that a comparison between employees in the Department and the labor pool is impossible, if not ludicrous.

The Court has serious doubts about the ultimate value of the statistics as presently before this Court in a trial on the merits but feels that they do suggest support for plaintiff's motion for certification. From the statistics, the EEOC investigation, and plaintiff's allegations, there is sufficient basis to find typicality and certify a plaintiff class. The fact that plaintiff may not have carried his burden in proving a prima facie case of discrimination by use of statistical evidence at this point is not at issue.

■ *Rule 23(a)(4)*: The representative parties must fully and adequately protect the interests of the class. This requirement may be the most significant consideration of Rule 23, particularly if no notice to absent class members is given in a (b)(2) class. *See Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed.2d 22 (1940). *See also Equal Opportunity Comm'n v. Detroit Edison,* 515 F.2d 301, 311 (6th Cir. 1975), *vacated and remanded on other grounds,* 431 U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977). The requirements of this section appear to be met in this case. *See Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3rd Cir. 1975); *Eisen v. Carlisle & Jacquelin (Eisen II),* 391 F.2d 555, 562–63 (2d Cir. 1968), *vacated on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Plaintiff's attorneys appear to be competent, able to represent the class fully, and qualified to prosecute the case vigorously. In addition, plaintiff's two original attorneys have moved, and the Court has granted, that Robert P. Belton, a law professor at Vanderbilt University, be associated as

---

**17.** It is not clear to the Court to what plaintiff is referring when he charges discrimination against fulltime employees. There do not appear to be any factual assertions in the record of more favorable treatment given to parttime employees than fulltime employees. Perhaps plaintiff is alluding to defendant's word of mouth hiring and promotion policies that allegedly have resulted in hiring from without the

Department rather than from within. If this is the substance of this charge, the Court has treated this issue in the context of discussions about hiring and promotion.

**18.** Plaintiff's Exhibit 6, on which the TCHD relied in its investigation of plaintiff's EEOC charge.

counsel. According to plaintiff's attorneys, Mr. Belton participated in the landmark Title VII cases of *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), and *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). There is no indication of any real or potential collusion between plaintiff and defendant. Finally, it does not appear that plaintiff's interests are antagonistic in any way to the interests of the class, particularly the class as the Court has herein narrowed it.

*Rule 23(b)(2)*: The party opposing the class must have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. A (b)(2) class must be cohesive and homogenous. *See Wetzel v. Liberty Mutual Ins. Co.*, supra, at 248; *Martin v. Easton Publishing Co.*, 73 F.R.D. 678, 683 (E.D.Pa. 1977). Such a classification is particularly appropriate for employment discrimination cases.[19] *See Wetzel v. Liberty Mutual Ins. Co.*, supra, at 250; *Barrett v. United States Civil Serv. Comm'n*, 69 F.R.D. 544, 555 (D.D.C.1975). *See also* Advisory Committee Notes to Rule 23(b)(2), 39 F.R.D. 69, 102 (1966).

As almost every issue under Title VII is a matter of dispute, whether or not notice to the putative class is required in a (b)(2) class is no exception. Although the Court of Appeals for the Second Circuit has held that due process requires notice in all class actions and that the express notice requirement of Rule 23(b)(3) only describes the

particular notice required in such a class, *Eisen v. Carlisle & Jacquelin (Eisen II)*, 391 F.2d 555, 564–65 (2d Cir. 1968);[20] *accord, Richmond Black Police Officers Ass'n v. City of Richmond*, 386 F.Supp. 151, 158 (E.D.Va.1974); *Arey v. Providence Hosp.*, 55 F.R.D. 62, 71 (D.D.C.1972), other courts have held that notice is superfluous in (b)(2) classes if the class is properly cohesive, *Wetzel v. Liberty Mutual Ins. Co.*, supra, at 254; *Sweet v. General Tire & Rubber Co.*, 74 F.R.D. 333, 336 (N.D.Ohio 1976).

Even if it is not necessary to give notice to absent class members in a (b)(2) class, this Court will, in its discretion, direct such notice to be given. The parties will devise an appropriate form and method of notice and submit such a proposal to this court for approval. If the parties are unable to agree, upon notification, the Court will set a hearing on the issue.

*Class Definition*. The Court certifies a class of black employees of the Department of General Services of the State of Tennessee who were qualified for and desired promotions but were denied such promotions into positions that were subsequently filled by whites. Excluded from this class are all black employees who left the employment of defendant prior to April 27, 1975, for purposes of plaintiff's cause of action under Title VII, or prior to May 6, 1976, for purposes of plaintiff's cause of action under 42 U.S.C. § 1981.[21]

---

**19.** The fact that plaintiff is asking for back pay on behalf of himself and the class does not, of course, preclude (b)(2) treatment, since the primary relief sought is injunctive. *Sperry Rand Corp. v. Larson*, 554 F.2d 868, 875 (8th Cir. 1977); *Senter v. General Motors Corp.*, supra, at 525; *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 341 (10th Cir. 1975); *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 421 (5th Cir. 1974), *rev'd on other grounds*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 44 (1976); *contra, Paddison v. Fidelity Bank*, 60 F.R.D. 695, 697 (E.D.Pa.1973).

**20.** On appeal, the United States Supreme Court specifically left unanswered the question of

whether or not due process requires notice in a (b)(2) case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 n.14, 94 S.Ct. 2140, 2152 n.14, 40 L.Ed.2d 732, 748 n.14 (1974).

**21.** April 27, 1975, is 180 days prior to October 24, 1975, the date on which plaintiff filed his first EEOC charge. *See* 42 U.S.C. § 2000e-5(e). May 6, 1976, is one year prior to May 6, 1977, the date on which plaintiff instituted suit in this Court. *See Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295, 302 (1975); T.C.A. § 28–304.