OPINION OF THE COURT
Harvey Sherman, J.
Plaintiffs, Anna Schreiber and Francis Popp, move before this court for summary judgment pursuant to CPLR 3212 and for the appointment of a guardian ad litem for the remaining three plaintiffs, Josephine Andrews, Catherine Dechagas and Vincenza Vitale pursuant to CPLR 1202.
Defendants oppose the motion and request that defendants Jesse Borck and Jerome Davis be dropped as parties to the action.
Plaintiffs sue for the recovery of moneys allegedly wrongfully withheld by defendants. Plaintiffs are residents in the Lake Shore Adult Home; defendants are allegedly the owners and operators of that home. Pursuant to subdivisions 1 and 7 of section 131-o of the Social Services Law the plaintiffs were entitled to receive a small sum of money on a monthly basis as a personal allowance. Anna Schreiber alleges that defendants wrongfully withheld $10 per month from her personal allowance for the months of July and August, 1977 and $20 per month from October, 1977 through July, 1978. Francis Popp alleges that defendants wrongfully withheld $10 per month from his personal allowance for the months of July, August and September of 1977 and $20 per month from October, 1977 through July, 1978. The defendants concede that this money was due to the plaintiffs pursuant to subdivision 7 of section 131-o of the Social Services Law and that they did in fact withhold it as alleged by plaintiffs. To that extent defendants, on or about August 3, 1978, paid the moving parties all moneys due and owing. Plaintiffs acknowledge receipt of the money and concede that the first cause of action has been effectively satisfied. Accordingly, the court will dismiss the first cause of action.
Plaintiffs’ remaining cause of action that constitutes the main issue presently before the court is for double punitive damages allegedly recoverable pursuant to subdivision 3 of section 131-o of the Social Services Law. However, before addressing the merits of that cause of action the court will dispose of plaintiffs’ request to appoint a guardian ad litem *81 and defendants’ request to drop Borck and Davis as defendants.
Plaintiffs’ request that the court appoint a guardian ad litem for plaintiffs Josephine Andrews, Catherine Dechagas and Vincenza Vitale must be denied with leave to renew upon proper papers. Plaintiffs contend that these three parties have declined to pursue their rights in this action because of duress placed upon them by the defendants. Certainly the allegations of fact as related to the court by plaintiffs’ counsel raise some concern that these parties may have declined to participate in this motion because of duress placed upon them by the defendants. Nevertheless, CPLR 1202 requires that notice be given to the person who would be represented and since no such notice has been given in this instance, the court is inclined to deny the motion with leave to renew upon proper papers. The court would like to express its concern for the status of the nonmoving parties and urges plaintiffs’ counsel to pursue the matter.
Defendants’ request to drop Jesse Borck and Jerome R. Davis as parties is granted to the extent that summary judgment is granted in their favor and the complaint is dismissed as against them (CPLR 3212, subd [b]). Plaintiffs alleged in their complaint that Borck and Davis were members of the partnership which owns and operates Lake Shore Adult Home. Defendants dispute this and submit a certificate of business evidencing that only Max Mensch is transacting business in the name of Lake Shore Adult Home. Furthermore, defendants Borck and Davis contend that they are merely stockholders in the corporation that leases the building to the defendant Max Mensch. Plaintiffs do not dispute any of this nor do they submit any proof to support the allegation in their complaint that Borck and Davis are partners in the adult home. The court is, therefore, forced to conclude that Borck and Davis were not involved in the withholding of the moneys sued for and the complaint with respect to them fails to state a cause of action.
Turning now to the merits of the motion; it must first be determined if defendants wrongfully withheld the personal allowance and then, if so, to the extent necessary to entitle plaintiffs to punitive damages.
Section 131-o of the Social Services Law provides for a personal allowance for supplemental security income (SSI) recipients in residential care facilities. Subdivision 1 of that *82 section requires that $10 per month from July, 1977 to September, 1977 and $18 per month on and after October, 1977 be given directly to individuals in residential care facilities. This money is derived from additional State payments made pursuant to the Social Services Law. Defendants made all the required payments under subdivision 1. Subdivision 7 of section 131-0 provides that the amount of the recipient’s income which is disregarded in determining eligibility for SSI benefits pursuant to subdivision 5 of section 209 of the Social Services Law and subdivision (b) of section 1382a of title 42 of the United States Code shall also be treated as a personal allowance. Previously these "income disregards” were used to cover the costs of residential care. It is this subdivision that defendants admittedly refused to comply with.
Section 131-o of the Social Services Law became effective July 1, 1977. From that date through July, 1978 defendants failed to make payments required by subdivision 7. Instead, defendants allege that they placed these moneys in escrow accounts presumably pending judicial determination of the validity of subdivision 7 of section 131-o of the Social Services Law. It is to be noted that defendants did not commence any action in their own behalf with respect to section 131-0 of the Social Services Law nor did plaintiffs commence any action to recover the moneys due and owing during that time period. Instead defendants relied upon a declaratory judgment action commenced in Supreme Court, County of Albany, on behalf of one Irwin Kupferman doing business as Garnerville Home for Adults. On August 12, 1978 that court declared subdivision 7 of section 131-o of the Social Services Law unconstitutional (Kupferman v New York State Bd. of Social Welfare, Supreme Ct, Albany County, Aug. 15, 1978, Pennock, J.). The judgment was appealed and on March 8, 1979, the Supreme Court, Appellate Division, Third Department, reversed the lower court’s determination. The Appellate Division specifically held subdivision 7 to be valid and enforceable (Kupferman v New York State Bd. of Social Welfare, 66 AD2d 540, 544).
Defendants’ reliance on that litigation as grounds for withholding the money from the plaintiffs is without merit. Since there is no identity of parties there can be no res judicata effect with respect to any rulings, orders or judgments arising in that lower court action and as such it has no bearing or effect on the parties to this action. At best, the determinations of a trial court, if carefully reasoned, are *83 persuasive authority to support a particular legal issue (1 Carmody-Wait 2d, NY Prac, § 2:58). Furthermore, defendants were withholding the moneys an entire year prior to the trial court’s ruling of unconstitutionality. Ironically, defendants made payment of all the moneys due and owing some 8 days prior to the court’s ruling of unconstitutionality. Nevertheless, the Appellate Division’s determination that subdivision 7 of section 131-0 of the Social Services Law is valid, and is binding upon this court (1 Carmody-Wait 2d, NY Prac, § 2:58). Therefore, defendants’ first affirmative defense and counterclaim, both of which allege the invalidity of that subdivision, are stricken and dismissed.
Defendants’ contention that punitive damages should not be imposed because they were acting on their attorneys’ advice in withholding the funds is also without merit. Apparently, the law firm of De Graff, Foy, Conway and Holt-Harris which represented the plaintiffs in the Kupferman case (supra) are also counsel to the Association of Adult Care Facilities of New York State, Inc. Pursuant to their title as counsel, they advised all the members of the association to withhold the personal allowance funds now in issue. However, that advice was given on September 19, 1978 some two months after defendants reimbursed the plaintiffs and began making the required monthly payments. Hence, defendants’ act of withholding the funds could not have been based upon counsel’s advice.
However, even if the withholding of the funds was based upon counsel’s advice, it is no defense to this action for punitive damages. As a general rule, reliance on counsel’s advice may be shown in defense of a claim for punitive damages but only where malice is an essential element of that cause of action (14 NY Jur, Damages, § 189). The cause of action for punitive damages in this case is statutory and no malice need be shown to recover under it (Social Services Law, § 131-o, subd 3). In addition, it is well-settled law that a person is not absolved of willful wrongdoing because he relied on his attorney’s advice (Matter of Old Republic Life Ins. Co. v Thacher, 12 NY2d 48, 56; People v Marcus, 261 NY 268, 294; Matter of Anonymous v Arkwright, 5 AD2d 790, 791).
The defendants were under a statutory mandate to see that plaintiffs received their personal allowance (Social Services Law, § 131-o, subd 2). Defendants have failed to establish any justifiable defense for their failure to comply with that man *84 date. The court is, therefore, forced to conclude that defendants willfully and wrongfully withheld the plaintiffs’ personal allowance in contravention of section 131-o of the Social Services Law.
The sole remaining issue is whether this wrongful withholding of the personal allowance funds was in violation of subdivision 3 of section 131-o of the Social Services Law as to entitle plaintiffs to double punitive damages. Subdivision 3 of that section provides in part: "Any individual who has not received or been able to control personal allowance funds to the extent and in the manner required by this section may maintain an action in his own behalf for recovery of any such funds, and upon a showing that the funds were intentionally misappropriated or withheld to other than the intended use, for recovery of additional punitive damages in an amount equal to twice the amount misappropriated or withheld.”
Defendants contend that the funds were not "intentionally misappropriated or withheld to other than the intended use”. Concededly, the funds were not "misappropriated”, however, it is this court’s final conclusion that they were indeed "withheld to other than the intended use”.
The Legislature’s intent in enacting section 131-0 can be gleaned from subdivision 2 of that section, which provides in part: "The personal allowance * * * shall be made directly available to the individual for his own use in obtaining clothing, personal hygiene items, and other supplies and services for his personal use not otherwise provided by the residential facility.”
Without these funds persons living in residential care facilities, more specifically, "adult homes”, are completely reliant upon those who operate the facility for all their wants and needs. Individuals who have led productive lives, supported their families and made contributions in their community are placed in a position where they do not even have sufficient funds to purchase toiletries and clothing. It is at best a dehumanizing experience. This law represents an attempt by the Legislature to make bearable the living conditions of those individuals who have virtually been stripped of their dignity by institutionalization.
Subdivision 2 of section 131-0 is explicit in that the personal allowance funds are not to be put to any use by the facility and that they are to go directly to the individual. That subdivision further provides that whenever a resident autho *85 rizes an operator of a facility to "exercise control over” his or her personal allowance, such authorization shall be in writing and subscribed by the parties to be charged.
In this case, the facility operators exercised control over the personal allowance of the residents by withholding it for a period of one year without any written authorization. The law requires that the payments be made on a monthly basis (Social Services Law, § 131-o, subd 1). Hence, the Legislature contemplated that these funds would be used by the residents for their needs and wants as they arose. The lump-sum payments of these funds after a year cannot replace the personal items they needed but were unable to purchase during that time.
The intended use of the personal allowance funds is to provide the residents with money to purchase personal items when they need them. By withholding those funds for an entire year, it can be said that they were "withheld to other than [their] intended use”.
Furthermore, there is no evidence before the court with respect to the existence and nature of the alleged escrow accounts. This despite subdivision 4 of section 131-o which requires the defendants to maintain complete records and documentation of all transactions involving personal allowance accounts. There is not even an affidavit on personal knowledge attesting to the existence of the escrow accounts. On that ground alone summary judgment could be granted in favor of plaintiffs (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3212, pp 436-437).
The court would also like to note its concern for those residents of these facilities who are unable to obtain counsel to pursue their rights. The repayment of the personal allowances in this instance was not made until after this litigation was commenced. What is the status of the escrow accounts for other adult home residents throughout the State who have not the presence of mind or ability to pursue their rights? What will happen to those funds when the Statute of Limitations to recover them has run? Families who place loved ones in these facilities put their trust and faith in the owners and administrators to care for them. Defendants’ act of withholding these funds is a repugnant breach of that trust.
In accordance with the foregoing, summary judgment is granted in favor of plaintiffs Francis Popp and Anna Schreiber on their second cause of action for punitive damages *86 of $460 and $440 respectively against the defendants Max Mensch and Harold Marcus.