Stephanie AHRENS and Gladys McCabe, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Otis BOWEN, M.D., individually and as Secretary of the Department of Health and Human Services, et al., Defendant.

Cesar A. PERALES, as Commissioner of the New York State Department of Social Services, Plaintiff,

v.

Otis BOWEN, M.D., as Secretary of the Department of Health and Human Services, Defendant.

Nos. CV 82–0287, CV 82–1859.

United States District Court, E.D. New York.

Oct. 31, 1986.

Nassau/Suffolk Law Services Committee, Inc., Bay Shore, N.Y., for plaintiffs Ahrens and McCabe; Jane C. Reinhardt, of counsel.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y., Kiyo A. Matsumoto, Asst. U.S. Atty., Brooklyn N.Y., Robert Abrams, Atty. Gen. of New York, Barrie

L. Goldstein, Asst. Atty. Gen., New York City, for Com'r.

MISHLER, District Judge.

Plaintiffs Ahrens and McCabe move for summary judgment pursuant to Fed.R. Civ.P. 56. Cesar A. Perales (successor to Barbara Blum)[1] as Commissioner of New York State Department of Social Services ("Commissioner") joins plaintiffs in seeking a declaration that it was arbitrary and capricious for the Secretary of the Department of Health and Human Services ("the Secretary") to refuse to disregard an award of punitive damages by recipients of the Supplemental Security Income program ("SSI") in calculating eligibility for SSI benefits.

The Secretary moves for an order to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(1) and (6) based on: (1) lack of jurisdiction over the subject matter and (2) failure to state a claim upon which relief can be granted. The Secretary further moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

*Complaint of Plaintiff Ahrens*

When the complaint was filed in February 1982 Stephanie Ahrens was a 75 year old recipient of SSI. In the first quarter of 1981, Ahrens received monthly SSI payments of $271.96. In January 1981, Ahrens received the sum of $556 as punitive damages as a result of a lawsuit brought by Ahrens against owners of the adult home where she resided. The award of punitive damages was made pursuant to New York Social Services Law ("SSL") § 131–o[2] because the defendant adult home owner had wrongfully withheld sev-

eral monthly "personal allowance" payments from Ahrens in violation of § 131–o.

The Social Security Administration ("SSA") considered the award of punitive damages as countable income which reduced plaintiff's need for SSI benefits and for state supplemental payments. Accordingly, SSA determined that Ahrens had been overpaid in the amount of $556 during the first quarter of 1981. However, since she received her SSI check for January before she received the punitive damage proceeds of the action, SSA decided to recoup only $370.66, representing two-thirds of the overpayment of $556. The decision was affirmed by the Appeals Council of the Social Security Administration.

*Complaint of Plaintiff McCabe*

When the complaint was filed, Gladys McCabe was an 81 year old recipient of SSI benefits and a resident in an adult facility. McCabe received the sum of $648.20 in January 1981 as punitive damages in the action in which she joined Ahrens against the proprietor of the adult facility. Considering this payment as countable income, SSA used the same formula to recoup the overpayment as was applied to Ahrens. SSA recouped two-thirds of the overpayment in the amount of $432.12.

McCabe also sought reconsideration in a petition to the Social Security Administration. The petition was denied and the decision denying reconsideration was affirmed by the Appeals Council of the Social Security Administration.

*Class Certification*

Ahrens and McCabe brought this action for themselves and others similarly situ-

---

**1.** At the commencement of this litigation, Barbara Blum, as Commissioner of New York State Department of Social Services, and Richard Schweiker, as Secretary of the U.S. Department of Health and Human Services, were named parties in this action. They have been succeeded respectively by Cesar Perales and Dr. Otis Bowen, both of whom have been substituted as parties pursuant to Rule 25 of the Federal Rules of Civil Procedure.

**2.** New York Social Services Law § 131–o requires that a recipient of SSI benefits, receiving

residential care, be paid a monthly personal allowance out of the SSI grant "for his own use in obtaining clothing, personal hygiene items, and other supplies and services for his personal use not otherwise provided by the residential facility." § 131–o (2). Where a resident of such a facility has not received his or her personal allowance, "upon a showing that the funds were intentionally misappropriated or withheld to other than the intended use...." the SSI recipient may recover "punitive damages in an amount equal to twice the amount misappropriated or withheld." § 131–o (3).

ated[3] on the ground that the punitive damages award which they received in January 1981 was not income for the purpose of determining their eligibility for the receipt of SSI. Plaintiffs have not moved for class certification and this court has not certified the class.

*Plaintiffs' Claims and Causes of Action*

The first cause of action of the named plaintiffs alleges that the Commissioner is under a duty pursuant to § 34(3)(e)[4] and § 131–*o* of the New York State Social Security Law, to take affirmative action to amend the agreement made with the Secretary under 42 U.S.C. § 1382e(a)[5] and (b) to disregard "punitive damage awards [received] from personal allowance litigation in determining eligibility for the state supplement to SSI...." (Complaint par. 39 at 21–22). The complaint seeks a declaration that the Commissioner breached his duty in failing to secure this provision in the agreement and also seeks a mandatory injunction directing the Secretary and Commissioner to amend the agreement "to provide for disregard of punitive damages recovered under New York State [Social Security Law] § 131–*o*." (Complaint par. 5 at 25).

The second cause of action, stating a claim for the named plaintiffs only, seeks reversal of the Secretary's determination that plaintiffs were overpaid SSI benefits because punitive damages, recoverable under New York State Social Security Law ("S.S.L.") § 131–*o*, are considered income in determining eligibility.

Alternatively, the third cause of action seeks a finding of a waiver by the Secretary of his right to recoupment on the ground that under 42 U.S.C. § 1383(b) plaintiffs were without fault in receiving or failing to return the SSI and that recoupment would be inequitable and violative of New York State's public policy to punish proprietors of adult homes for depriving recipients of their personal allowance. Plaintiffs also seek attorney's fees under 28 U.S.C. § 2412 and/or 5 U.S.C. § 504.

The Secretary's answer denies the material allegations and affirmatively alleges (1) lack of subject matter jurisdiction, (2) lack of standing by the named plaintiffs, and (3) failure to state a claim upon which relief can be granted.

The claim against the Commissioner was dismissed as a pendent state claim for a determination of the duty of the Commissioner to seek an amendment of the agreement between the Secretary and the Commissioner. *Ahrens v. Schweiker,* CV 82–0287, Memorandum of Decision and Order filed December 29, 1982. The Commissioner filed a claim on June 25, 1982 against the Secretary cast in terms of a request to the Secretary to modify the existing Federal/State agreement so that punitive damages, received by recipients of SSI benefits, would not be considered income for eligibility purposes. This action was consolidated with the actions of plaintiffs Ahrens and McCabe by order dated July 9, 1982. The Commissioner further seeks a determination that the Secretary's refusal to modify

---

**3.** In plaintiffs' complaint the class is stated to be "all New York citizens who have had or will have punitive damages recovered by them in litigation under S.S.L. § 131–*o* regarded as income effecting their financial eligibility for SSI." Complaint, par. 7.

**4.** Section 34 entitled "General powers and duties of the commissioner," provides in subd. (3)(e), "The Commissioner shall enforce the chapter and the regulations of the department within the state and in the local governmental units."

**5.** Section 1382e(a) provides in pertinent part that:

Any cash payments which are made by a state .. to individuals who are receiving benefits

under this title [42 U.S.C. §§ 1381 *et seq.*] or who would but for their income be eligible to receive benefits under this title ... shall be excluded ... in determining the income of such individuals ... and the Secretary and such State may enter into an agreement which satisfies subsection (b) under which the Secretary will, on behalf of such State ... make such supplementary payments to all such individuals."

Based on this section, a state/federal agreement exists between New York State and the Secretary which provides for SSI benefits as well as state supplemental payments to be administered by the S.S.A.

the agreement is violative of 42 U.S.C. §§ 1382e(b)(2) and 1382e(c)(2) and is arbitrary and capricious. The Commissioner thus is in the same position as plaintiffs in seeking a modification of the agreement.

*The Federal-State SSI Program*

Title XVI, the Federal SSI provisions of the Social Security Act, became effective on January 1, 1974. These provisions were incorporated into the Social Security Act in order to establish a "national program to provide supplemental security income to individuals who have attained age 65 or are blind or disabled...." 42 U.S.C. § 1381. Under the program recipients receive a flat grant. The amount of the grant depends on the category into which the recipient falls.[6] The program provides uniform benefits for recipients of the same level throughout the nation. It permits the state to supplement the federal grant and encourages such supplemental payments by excluding them from countable income in calculating eligibility for SSI, §§ 1382a(b)(6), 1382e(a) and by providing that the Secretary administer the optional state supplementation. § 1382e(a), (b).

Agreements between the Secretary and the State for state and federal SSI benefits are provided for in § 1382e(a), (b). New York S.S.L. § 211 authorizes the New York Department of Social Services to enter into an agreement with the Secretary for the administration of the state supplemental program by the Secretary. 42 U.S.C. § 1382e(b)(2) requires that the agreement shall provide "such other rules with respect to ... amount of the supplementary payments ... as the Secretary finds necessary ... to achieve efficient and effective administration [of the program]." S.S.L. § 211(2) provides that the Secretary may determine eligibility for state supplements including the "amounts of earned or unearned income to be disregarded in determining eligibility ... in accordance with ... federal law and regulations."

Since 1977 New York State has provided recipients of SSI benefits, who reside in state licensed adult homes, a personal allowance as part of the state supplement. As of July 1, 1980 the monthly personal allowance granted to an SSI beneficiary receiving residential care was $33.33, S.S.L. § 131–o(1)(b). This sum was intended to cover the cost of clothing, personal hygiene items and other supplies and services not otherwise available in the home.

S.S.L. § 131–o(3) provides that where such funds are misappropriated or withheld by the home, the resident may maintain an action to recover the amount withheld together with "additional punitive damages in an amount equal to twice the amount misappropriated or withheld." The New York statute further provides that:

> Any funds obtained as a result of such an action shall be disregarded in determining such individual's eligibility for or amount of benefits available pursuant to this chapter, to the extent permitted by federal law and regulation.

S.S.L. § 131–o(3).

The criteria for eligibility for SSI benefits as set forth in 42 U.S.C. § 1382 are based on income and resources of the recipient. In determining eligibility based on amount of income we are bound by the definitions of income and the exclusions from income found in § 1382a.

*Waiver of Recoupment*

In March 1986 the Secretary waived recoupment of the overpayments received by Ahrens and McCabe just before the Secretary filed her motion to dismiss the complaint. *See* Defendant's Memorandum of

---

**6.** 42 U.S.C. § 1382(a)(1) provides:

Each aged, blind, or disabled individual who does not have an eligible spouse and
> (A) whose income, other than income excluded pursuant to section [1382a(b) of this title,] is at a rate of not more than $1,752 (or, if greater, the amount determined under section [1382f of this title]) for the calendar year 1974 or any calendar year thereafter, and

> (B) whose resources, other than resources excluded pursuant to section [1382b(a) of this title] are not more than (i) in case such individual has a spouse with whom he is living, [$2,250,] or (ii) in case such individual has no spouse with whom he is living, [$1,500]."

Cost of living increases have been granted periodically since January 1974 pursuant to § 1382f.

Law in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendant Secretary's Motion to Dismiss, at p. 5; Affidavit Karen Wilson, Director of the Litigation Staff in the Office of Policy, Social Security Administration, Department of Health and Human Services (March 26, 1986). This decision to repay plaintiffs the money that had been recovered by the Social Security Administration more than four years earlier was made pursuant to 42 U.S.C. § 1383(b). Several prior applications by each named plaintiff for waiver of recoupment had been repeatedly denied by the Secretary.[7]

## DISCUSSION

### Class Certification

■ Plaintiffs have not moved for class certification, nor have they presented sufficient factual support to meet the requirements for class certification under Fed.R. Civ.P. 23. The burden of proof remains with the named plaintiffs to supply the adequate factual information to establish the requisite elements for class certification under the rule. *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir.1974); *In re Asbestos School Litigation*, 104 F.R.D. 422, 427 (E.D.Pa.1984), *modified on other grounds* by 107 F.R.D. 215 (E.D.Pa.1985); *Duncan v. State of Tennessee*, 84 F.R.D. 21, 27 (M.D.Tenn. 1979) citing *Price v. Lucky Stores, Inc.*, 501 F.2d 1177, 1179 (9th Cir.1974). The plaintiffs here have failed to meet this burden.

■ An action is not maintainable as a class action simply because it is designated as such in the pleadings. *Weathers v. Peters Realty Corp., supra*, at 1200. More is required than the mere conclusory allegations in the complaint which parrot the language of Rule 23 as in the instant case. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir.1977) citing *Gillibeau v. Richmond*, 417 F.2d 426, 432

(9th Cir.1969); *Weathers v. Peters Realty Corp., supra*, at 1200; *Duncan v. State of Tennessee, supra*, at 27. In order to maintain a class action, the named plaintiff must establish each of the four threshhold requirements of Rule 23(a): numerosity, commonality, typicality and adequacy of representation. *In re Asbestos School Litigation, supra*, at 427 (citing *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 246 (3d Cir.1975), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679). Where, as here, there is merely a recitation in the complaint that each of these requirements is satisfied, the court is not bound to find that class treatment is proper. *Peak v. Topeka Housing Authority*, 78 F.R.D. 78, 83 (D.Kan.1978). It is peculiarly within the broad discretion of the trial judge to determine whether an action should be maintained as a class action. *Becker v. Schenley Industries, Inc.*, 557 F.2d 346, 348 (2d Cir.1977). Moreover, class action certification is not required but only discretionary in cases, such as this one, which seek only declaratory and injunctive relief for the class. *Bizjak v. Blum*, 490 F.Supp. 1297, 1301 (N.D.N.Y.1980). Considering the foregoing factors the court has declined to certify the class in this case.

### Mootness

The Secretary argues that his waiver of the right to recoup overpayments to the named plaintiffs renders the plaintiffs' claim moot. Thus, he argues, since the court has not certified the class, no case or controversy exists to invoke federal jurisdiction and the first cause of action must be dismissed. In support of this argument, the Secretary cites *Sosna v. Iowa*, 419 U.S. 393, 400, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975) ("When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant.").

---

**7.** Waiver of recoupment of the overpayments to Ahrens and McCabe was denied by the Secretary on March 6, April 22, August 12 and August 17, 1981. Plaintiffs' Rule 3(g) Statement of Material Facts in Support of Motion for Summary Judgment.

The waiver of the right to recoupment by the Secretary does not in and of itself make the case moot. *In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 318 (3d Cir.1983). Where a practice continues after resolution of the immediate complaint so that the violation is "capable of repetition, yet evading review," mootness is avoided. *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 1414, 55 L.Ed.2d 707 (1978) (citing *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911)); *see also Delta Airlines, Inc. v. C.A.B.,* 674 F.2d 1, 4 (D.C.Cir.1982); *Finberg v. Sullivan,* 634 F.2d 50, 55 (3d Cir.1980); *Frost v. Weinberger,* 515 F.2d 57, 62–63 (2d Cir.1975), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976).

The voluntary cessation of challenged conduct does not automatically render the claim moot so as to deprive the court of power to hear and determine the issue. *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 287, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982); *County of Los Angeles v. Davis,* 440 U.S. 625, 632, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

Although here the Secretary has voluntarily waived recoupment of the overpayments to the named plaintiffs and returned the withheld funds to them, the Secretary's practice of recovering overpayments of SSI funds where punitive damages have been received by SSI recipients is certainly "capable of repetition, yet evading review." In applying this exception to the mootness doctrine there must be a reasonable expectation or demonstrated probability that the challenged conduct will recur. *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1184, 71 L.Ed.2d 353 (1982) (citing *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975)).

In the instant action the Secretary has maintained that it is the policy of the SSA to consider punitive damage awards as income in computing eligibility for SSI. It is also the policy and practice of the SSA to recover any excess payments made to SSI beneficiaries. It is far from remote or unlikely that the plaintiffs may again become recipients of punitive damages under New York Social Services Law § 131–o. Indeed, the proprietor of the adult home where plaintiffs reside has a history of wrongfully withholding personal allowances from residents. *May v. Marcus,* 76 A.D.2d 903, 429 N.Y.S.2d 241 (2d Dep't 1980); *Andrews v. Mensch,* 100 Misc.2d 79, 418 N.Y.S.2d 527 (1st Dist.1979). Thus, plaintiffs may well find themselves in the very same situation in the future.

It is just as probable that the Secretary would again evade review of the issue by waiving recoupment. The fact that the Secretary, who had repeatedly refused to waive recoupment in the present case over a five year period, suddenly elected to do so on the eve of plaintiffs' motion for summary judgment is a clear indication of such an intent. This strategic maneuver suggests an attempt by the Secretary to conjure up an argument for mootness and thwart adjudication of the issue. We do not believe the issue here is moot. We now turn our attention to the merits of the case.

*Punitive Damages under Social Services Law § 131–o as Countable Income for SSI*

The only issue to be considered in plaintiffs' second cause of action is whether the receipt by the named plaintiffs of punitive damages under S.S.L. § 131–o is countable income.

Plaintiffs cite the en banc decision of the Ninth Circuit Court of Appeals in *Grunfeder v. Heckler,* 748 F.2d 503 (9th Cir.1984) in support of their position, relying in particular on the concurring opinion. The question in *Grunfeder* was whether reparations paid by the German Federal Republic to survivors of the Holocaust were to be considered countable income under § 1382(a)(1) and § 1382a. The court found that such payments were not includable as

income for SSI eligibility purposes since Congress had declared that such payments were non-taxable income and were made by the German Government "for penitent purposes." *Id.* at 506. The court stated:

> Having recognized the great suffering of people like Felicia Grunfeder, and having consistently taken steps to ameliorate their plight, Congress could not have intended to undermine its own longstanding policy favoring their welfare by counting German reparations payments as income in determining eligibility for SSI benefits.

*Id.* at 510. The concurring opinion would exclude reparations payments from countable income on the theory that such payments "are in the nature of tort compensation" *id.* at 510, and such payments are not taxable under the Internal Revenue Code.

Four dissenting judges adopted the reasoning of the original panel decision [8] rejecting the argument made by plaintiffs here that tort recoveries are not countable income. The original panel found that the broad sweep of the language of § 1382(a) in defining income for SSI eligibility purposes, the specific exclusions listed in § 1382a(b) and the regulations promulgated by the Secretary require that tort damages be counted as income for SSI eligibility.

■ We agree with this analysis and apply it to the award of punitive damages,[9] and we find the instant case distinguishable from the majority result reached in *Grunfeder.*

■ The SSI program is designed to supplement the income of needy aged, blind or disabled persons. An individual qualifies for SSI if his income, both earned and unearned, and his resources fall below a certain level. 42 U.S.C. § 1382a. Congress characterizes "earned income" as including wages, net earnings from self-employment, refunds of Federal income tax and remuneration for services performed in work activity centers. *Id.* § 1382a(a)(1). A more expansive description is given to "unearned income" where Congress includes "all other income" listing seven categories of receipts. *Id.* § 1382a(a)(2). These include, *inter alia,* such items as "any payments received as an annuity, pension, retirement, or disability benefit, including veterans' compensation and pensions, workmen's compensation payments, old-age, survivors, and disability insurance benefits, railroad retirement annuities and pensions and unemployment insurance benefits; prizes and awards...." *Id.* § 1382a(a)(2). The language of the section makes clear that all such items of income are to be used to reduce the SSI grant,[10] except for the 12 specific exclusions set forth in § 1382a(b). An award of punitive damages is not listed among these exclusions. 20 C.F.R. § 416.120(c)(2) defines income as "the receipt by an individual of any property ... which he can apply ... to meeting his basic needs." 20 C.F.R. § 416.1102 further explains that "[i]ncome is anything you receive in cash or in kind that you can use to meet your needs for food, clothing, or shelter." In defining "prizes and awards," one of the categories

---

**8.** The Ninth Circuit Court of Appeals had originally affirmed the Secretary's determination, 708 F.2d 458 (9th Cir.1983), but upon rehearing en banc, reversed. Some of the dissenting judges sat on the original panel.

**9.** For income tax purposes "income" includes awards of punitive damages but excludes compensatory damages. The Court in *Commissioner of Internal Revenue v. Glenshaw Glass Co.,* 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955) held that the definition of gross income under § 22(a) of the Internal Revenue Code of 1939 included punitive damages. The Court held that, "The mere fact that the payments were extracted from the wrongdoers as punishment

for unlawful conduct cannot detract from the character as taxable income to the recipients." *Id.,* 348 U.S. at 31, 75 S.Ct. at 477.

The Court held the same would be true under the 1954 Code.

**10.** H.R.Rep. No. 92–231, 92nd Cong., 2d Sess. (1972), reprinted in [1972], U.S.Code Cong. & Ad.News 4989 at 5135–36 states:

> Your committee believes that the new program, financed as it would be from general revenues and with the benefits based on need, should pay people only to the extent that their needs are not met from other sources....

of unearned income listed in § 1382a, the federal regulations state

[a] prize is generally something you win in a contest, lottery or game of chance. An award is usually something you receive as the result of a decision by a court, board of arbitration, or the like.

20 C.F.R. § 416.1121(f).

Thus an award of punitive damages should be considered countable income in determining need-based SSI eligibility. Unlike compensatory damages, which are restitutionary in nature and attempt to make the recipient whole,[11] as found by the *Grunfeder* court in the case of reparations, punitive damages are intended to punish the wrongdoer and deter similar conduct. The reparations payments in *Grunfeder* were compensatory in nature and are distinguishable from the punitive damages at issue here.[12]

■ Plaintiffs' argument that New York law requires that the Secretary disregard punitive damages in determining SSI eligibility is inapposite. Although New York State law may provide for disregard of punitive damages awarded under S.S.L. § 131-*o* in determining eligibility for state supplemental benefits, it does so only "to the extent permitted by federal law and regulation." S.S.L. § 131-*o*. Federal SSI is a uniform national program administered in a consistent manner throughout the nation. It is inappropriate to expect the Secretary in administering the program to cater to the particular provisions of a state law by disregarding punitive damages received pursuant to that law.

We find that the punitive damages award received by plaintiffs is countable income for purposes of determining SSI eligibility. Plaintiffs' motion for summary judgment is denied as is plaintiffs' application for attorney's fees. Defendant's motion pursuant to Fed.R.Civ.P. 12(c) is granted, and it is

SO ORDERED.

The Clerk of the Court is directed to enter judgment in favor of the Secretary of the Department of Health and Human Services and against the plaintiffs Stephanie Ahrens and Gladys McCabe, individually and on behalf of all others similarly situated, dismissing the complaint.

The Commissioner of the New York State Department of Social Services rests his claims on the same ground asserted by Ahrens and McCabe, i.e., that punitive damages recovered under S.S.L. § 131-*o* is not countable income in determining eligibility for benefits under the SSI program. The claims state that the refusal to modify the agreement between the Secretary and the state is arbitrary and capricious and an abuse of discretion. Our discussion brings us to the conclusion that the Secretary is without authority to modify the agreement as requested by the Commissioner. The complaint in *Blum v. Schweiker*[13] is dismissed, and it is

SO ORDERED.

The Clerk is directed to enter judgment in favor of the Secretary of the Department of Health and Human Services and against the Commissioner of the New York State Department of Social Services dismissing the complaint.

11. *See In re Agent Orange Product Liability Litigation,* 611 F.Supp. 1396, 1424–26 (E.D.N.Y. 1985) (finding that settlement payments in the Agent Orange case were "intended to compensate an individual for injuries to his or her person" and alleviate some of the suffering of class members, thus meriting exclusion from income or resources in determining eligibility for public assistance programs.)

12. Plaintiffs Ahrens and McCabe also received compensatory damages in their actions against their adult home owner. These awards were *not* considered income by the Secretary in calculating SSI benefits.

13. The action of *Blum v. Schweiker,* now amended as *Perales v. Bowen,* was consolidated with the actions of plaintiffs Ahrens and McCabe by order dated July 9, 1982.