Stephanie AHRENS and Gladys McCabe, individually and on behalf of all others similarly situated, Cesar A. Perales, as Commissioner of the New York State Department of Social Services, Plaintiffs–Appellants,

v.

Otis BOWEN, M.D., individually and as Secretary of the Department of Health and Human Services, Defendant–Appellee.

Nos. 74, 75, Dockets 86–6270, 87–6002.

United States Court of Appeals, Second Circuit.

Argued Nov. 9, 1987.

Decided July 14, 1988.

Moira Morrissey, New York City, N.Y., Asst. Atty. Gen. (Robert Abrams, Atty. Gen. of the State of N.Y., Mary Fisher Bernet, of counsel), for plaintiffs-appellants.

Jane C. Reinhardt, Bay Shore, N.Y. (Nassau/Suffolk Law Services Committee, Inc., Leonard S. Clark, of counsel), for plaintiffs-appellants.

Kiyo A. Matsumoto, Brooklyn, N.Y., Asst. U.S. Atty. (Andrew J. Maloney, U.S. Atty. for the E.D.N.Y., Robert L. Begleiter, New York City, of counsel), for defendant-appellee.

Before MESKILL, PRATT, and ALTIMARI, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

This case presents the novel question of whether federal regulations control determinations of eligibility for state benefits that are distributed and administered by a federal agency. The New York State Department of Social Services and the individual plaintiffs, Stephanie Ahrens and Gladys McCabe, appeal from the district court's denial of their motions for summary judgment and grant of judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), in favor of the secretary of the Department of Health and Human Services.

## BACKGROUND

Stephanie Ahrens and Gladys McCabe are recipients of optional state supplementary benefits ("OSS") under the supplemental security income program ("SSI") administered by the Department of Health and Human Services ("HHS"). 42 U.S.C. § 1381 *et seq.* This statutory scheme authorizes three benefits programs: a federal benefits program, a mandatory state supplementary benefits program, and an optional state supplementary benefits program. States electing to participate in the optional program may enter into an agreement with the federal government under which HHS both administers the OSS payments in conjunction with the federal SSI benefits and bears the administrative costs arising from the agreement. 42 U.S.C. § 1382e(a).

Because the eligibility of the individual plaintiffs, Ahrens and McCabe, for federal SSI benefits is offset fully by pensions they receive from other sources, and they are not entitled to mandatory state supplementary benefits, they receive only the New York State OSS benefits.

New York Social Services Law § 131–o (McKinney 1983 and Supp.1988) provides that, while most of the OSS benefits are paid directly to the adult home in which the recipients live, a portion of these OSS benefits must be made available directly to the individuals as a personal allowance. When this personal allowance is intentionally withheld New York law provides for recovery of the personal allowance and "additional punitive damages in an amount equal to twice the amount misappropriated or withheld". N.Y.Soc.Serv.Law § 131–o (3). New York law also provides that "[a]ny funds obtained as a result of such an action shall be disregarded in determining such individual's eligibility for or amount of benefits * * * to the extent permitted by federal law and regulation". N.Y.Soc. Serv.Law § 131–o (3).

In 1979 Ahrens and McCabe sued the owner of the adult home in which they live for violating § 131–o by withholding their personal allowances from them. In January 1981 the plaintiffs settled their law suits against the home's owner, and recovered both compensatory and punitive damages: Ahrens received $185 compensatory and $351 punitive and McCabe received $216 compensatory and $432 punitive. Both plaintiffs reported receipt of these payments to the Social Security Administration ("SSA").

In March 1981 the SSA determined that the plaintiffs' OSS benefits had been overpaid because, while the compensatory damages represented no more than what plaintiffs were entitled to in OSS benefits, the punitive damages were, under federal law, countable income that reduced the plaintiffs' eligibility for OSS benefits during February and March 1981. 42 U.S.C. § 1382a(a)(2). The SSA determined that Ahrens had been overpaid $370.66 and that McCabe had been overpaid $352.11 and notified the plaintiffs that the amounts overpaid would be withheld from future OSS payments. Both plaintiffs pursued administrative review by the SSA of the overpayment determinations.

The SSA affirmed the overpayment determinations, finding, in part, that in the absence of a provision in the federal/state agreement providing for disregard of punitive damages recouped under N.Y.Soc. Serv.Law § 131–o, the federal regulations for determination of eligibility must be applied. Plaintiffs contacted the New York State Commissioner of the Department of

Social Services, and requested that the commissioner pursue modification of the federal/state agreement. But when the state commissioner requested such a modification, the secretary refused to modify the contract.

In February 1982 Ahrens and McCabe commenced this action against the secretary of HHS claiming that his failure to disregard the punitive damage awards in calculating their income was an abuse of discretion and that, in any event, the secretary should have waived recoupment of the overpayment under 42 U.S.C. § 1383(b)(1), since McCabe and Ahrens had been without fault. The New York State commissioner was also originally named as a defendant, but that claim was dismissed. Four months later, in June 1982, the state commissioner initiated a companion lawsuit against the secretary which was consolidated with the case of Ahrens and McCabe. In September 1985 the plaintiffs moved for summary judgment.

While that motion was still pending, in March 1986, the secretary refunded the benefits previously withheld from Ahrens and McCabe as an exercise of "administrative grace". Then the secretary moved to dismiss the plaintiffs' action under Fed.R. Civ.P. 12(b)(6) and for judgment on the pleadings under Fed.R.Civ.P. 12(c), claiming, as one ground for dismissal, that the plaintiffs' claims were moot because the recouped money had been refunded to them. The secretary also claimed that he had correctly determined that punitive damage awards are countable income and that the plaintiffs had been overpaid.

The district court did not find the plaintiffs' claims to be moot but granted judgment on the pleadings to the secretary finding that federal regulations must be applied in determining eligibility for state OSS benefits and that the punitive damages received by the plaintiffs were countable income under the federal regulations. This appeal followed.

## DISCUSSION

### I. *Mootness.*

■ The secretary argues that because he waived recoupment of the overpayments made to Ahrens and McCabe "by administrative grace" the claims of these two individual plaintiffs are moot. He contends that where, as here, plaintiffs have fully recouped the funds previously withheld from them, and no class has been certified, the plaintiffs cannot challenge the secretary's policy because they are not presently harmed by it.

The district court held that the secretary cannot unilaterally, simply by voluntarily waiving recoupment of the alleged overpayments, moot the case. We agree with the district court.

■ A defendant's voluntary cessation of the challenged conduct "does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). *See also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982). Although a defendant's abandonment of a challenged practice is one factor that a court should consider in determining whether to adjudicate the controversy before it, it is "a matter relating to the exercise rather than the existence of judicial power." *Id.* (footnote omitted). When a defendant does attempt to obtain dismissal on mootness grounds in such a case, the test is a " 'stringent' " one. *See id.* at 289 n. 10, 102 S.Ct. at 1074, n. 10 (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203–04, 89 S.Ct. 361, 364–65, 21 L.Ed.2d 344 (1968)). There must be a showing that " 'it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur * * * [or, put another way, that] the likelihood of further violations is sufficiently remote to make * * * [judicial] relief unnecessary.' " *Id.* (quoting *Concentrated Phosphate*, 393 U.S. at 203–04, 89 S.Ct. at 364–65). *See also County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *W.T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897; *Ragsdale v. Turnock*,

841 F.2d 1358, 1365 (7th Cir.1988). It is incumbent upon the defendant who has ceased to engage in the challenged practice and who is seeking dismissal to meet the "heavy" burden of satisfying this test. *See W.T. Grant Co.*, 345 U.S. at 632–33, 73 S.Ct. at 897–98; *see also Davis*, 440 U.S. at 631, 99 S.Ct. 1383; *Ragsdale*, 841 F.2d at 1365; *In re Center for Auto Safety*, 793 F.2d 1346, 1352 (D.C.Cir.1986); *Lovell v. Brennan*, 728 F.2d 560, 563 (1st Cir.1984). Finally, when injunctive relief is sought, the decision on whether to exercise jurisdiction in such cases lies within the discretion of the district court. *See W.T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897; *Lovell v. Brennan*, 728 F.2d at 563.

In this case, Judge Mishler concluded that it was "far from remote or unlikely that the plaintiffs may again become recipients of punitive damages under New York Social Services Law § 131–*o*." *Ahrens v. Bowen*, 646 F.Supp 1041, 1048 at 15 (E.D. N.Y.1986). Judge Mishler specifically noted that the proprietor of the adult home where the plaintiffs resided had a "history of wrongfully withholding personal allowances from residents." *Id.* (citing *May v. Marcus*, 76 A.D.2d 903, 429 N.Y.S.2d 241 (2d Dep't 1980); *Andrews v. Mensch*, 100 Misc.2d 79, 418 N.Y.S.2d 527 (1st Dist. 1979)). Thus, he concluded that "[the] plaintiffs may well find themselves in the very same situation in the future." *Id.* As to the probability that the secretary of HHS would again seek to evade review by voluntarily and unilaterally waiving recoupment of benefits, Judge Mishler concluded that the secretary's conduct in this lawsuit made it at least likely that he harbored such an intent.

> The fact that the Secretary, who had repeatedly refused to waive recoupment in the present case over a five year period, suddenly elected to do so on the eve of plaintiffs' motion for summary judgment is a clear indication of such an intent. This strategic maneuver suggests an attempt by the Secretary to conjure up an argument for mootness and thwart adjudication of the issue.

*Id.* at 1048.

We do not believe that Judge Mishler's conclusions were clearly erroneous. Nor do we believe that Judge Mishler abused his discretion in deciding to exercise jurisdiction and adjudicate the controversy before him despite the secretary's voluntary cessation of the challenged conduct. Moreover, the secretary continues to insist that punitive damages received by OSS recipients pursuant to N.Y.Soc.Serv.Law § 131–*o* are countable income for the purpose of determining eligibility for OSS benefits. It is precisely his insistence on the validity of the challenged practice that makes it "reasonable" to expect that the conduct will be repeated. This, combined with the fact that the plaintiffs continue to be OSS recipients and residents of the same adult home where their personal allowances were previously wrongfully withheld, makes it likely that the plaintiffs may again find themselves in the same situation, and the secretary would still retain the power to waive recoupment before the validity of the practice could be adjudicated.

Because it is reasonable to expect that the same conduct will be repeated with respect to these plaintiffs, the issue is not moot.

## II. *Determining Eligibility for OSS Benefits.*

The secretary is in the unusual position of administering, in addition to the federal SSI benefits program, two state supplement programs: optional and mandatory state supplements. New York has elected to participate in the optional supplementary payments program and, under the agreement between New York and HHS, the secretary is required to calculate recipients' income and determine their eligibility for the state benefits.

Under the statute, the secretary calculates the income of an applicant and makes eligibility determinations with respect to both federal SSI and state OSS benefits. The statute specifies certain types or amounts of income that "shall be excluded" in determining the income of an individual. 42 U.S.C. § 1382a(b)(1) through (13). Un-

der federal law these designated types of income must be excluded, not only in calculating the federal SSI eligibility, but also in calculating the state OSS benefit eligibility. However, the state may specify in the agreement that certain amounts of income be disregarded in addition to these required exclusions. 42 U.S.C. § 1382e(c)(2).

Despite the secretary's position (a) that the regulations promulgated pursuant to this statute provide that countable income for determining OSS is to be determined in the same manner as for SSI, 20 C.F.R. § 416.2025(b), and (b) that counting punitive damage awards as income for SSI purposes but disregarding them for OSS is untenable under federal law, we disagree. The very regulation that the secretary cites states that "[a] State has the *option* of excluding amounts of earned and unearned income in addition to the amounts it is *required* to exclude". 20 C.F.R. § 416.2025(c) (emphasis added). To determine whether the state has exercised this option, we look at the federal/state agreement. Thus in administering the state OSS benefits program, the secretary must disregard the additional amounts of earned and unearned income that are specifically excluded by the federal/state agreement.

The secretary argues that pursuant to 42 U.S.C. § 1382e(c)(2), he is not permitted to disregard *types* of income, but is permitted to disregard only *amounts* of income. In other words, according to the secretary, the statute allows states to specify an additional amount, for example, $10, of income to be disregarded in calculating an individual's eligibility for state supplementary benefits, but may not specify that income from a particular source, or of a particular type, must similarly be disregarded. However, this interpretation is not supported by the legislative history, nor by any similar distinction between "amounts" and "types" elsewhere in the statute. Mandatory exclusions for calculating income for both SSI and OSS benefits, include both "amounts" and "types" of income, for example: (1) earned income of students; (2)(A) the first $240 per year; (2)(B) monthly payments received under state programs established prior to July 1, 1973; and (5) any amount received as a return or refund of taxes paid on real property or on food. 42 U.S.C. § 1382a(b)(1) through (13).

■ While we reject the glib distinction between "types" and "amounts" proposed by the secretary, and hold that the secretary has the power under both the statute and the regulations to disregard the punitive damages received by the plaintiffs in calculating OSS benefits, in this case the secretary was not *required* to disregard the punitive damages because no such disregard was specified in the federal/state agreement. When the state commissioner sought a modification of the agreement in order to specify precisely this disregard, the secretary refused to go along with the proposed modifications.

■ The secretary argues that this court does not have jurisdiction to determine whether he abused his discretion in refusing to modify the agreement, because the state commissioner did not exhaust his administrative remedies. We disagree. Because of the secretary's clear position that he lacked the power to so modify the agreement, any further administrative proceedings would have been futile; therefore exhaustion was not required. *See Weinberger v. Salfi,* 422 U.S. 749, 765–66, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975). *See also Kozera v. Spirito,* 723 F.2d 1003, 1009–10 (1st Cir.1983).

■ One question remains: whether the secretary abused his discretion in refusing the state commissioner's request to modify the federal/state agreement. Because the district judge found that an award of punitive damages "should be considered countable income", *Ahrens v. Bowen,* 646 F.Supp. 1041 at 1050 (E.D.N.Y.1986), he did not reach this question. Therefore, we consider it for the first time on appeal. Federal regulations provide that the agreement can be modified "by mutual consent" of the secretary and the state commissioner. 20 C.F.R. § 416.2010(e). However, the secretary may not unreasonably withhold his consent from a proposed modification.

The only statutory restriction on state-proposed modifications to the agreement is

in 42 U.S.C. § 1382e(b)(2), which provides that the agreement shall include:

> such other rules with respect to eligibility for or amount of the supplementary payments, and such procedural or other general administrative provisions, as the Secretary finds necessary *(subject to subsection (c) of this section)* to achieve efficient and effective administration of both the [federal] program * * * and the optional State supplementation.

42 U.S.C. § 1382e(b)(2) (emphasis added). Even this provision, which allows the secretary to make whatever rules are necessary for efficient administration, is explicitly subject to subsection (c), which provides in part:

> (2) Any State * * * in determining the eligibility of any individual for supplementary payments * * * may disregard amounts of earned and unearned income in addition to other amounts which it is required or permitted to disregard * * *.

Thus the secretary, in determining whether or not to accept the modifications proposed in this case, might properly consider only whether disregarding punitive damages for purposes of calculating OSS eligibility would be administratively burdensome.

Although modification of the federal/state agreement is within the secretary's discretion, that discretion is limited by the language of the statute and by congress's intent. For the secretary to refuse to modify the agreement and give no reason, or to base his refusal on considerations other than administrative efficiency, would be an abuse of discretion.

■ Because we cannot determine, on the basis of this record, whether the secretary found the proposed modification—requiring him to disregard punitive damages received under N.Y.Soc.Serv.Law § 131–o when calculating OSS eligibility—administratively burdensome, and, if he did, whether or not that finding was justified, we remand to the district court to determine whether or not the secretary abused his discretion in refusing to so modify the agreement at the state's request.

### III. *Attorneys' Fees.*

■ The individual plaintiffs claim attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, which permits parties who successfully challenge government actions to recover the costs of litigation "unless the court finds that the position of the United States was substantially justified", 28 U.S.C. § 2412(d)(1)(A). With respect to plaintiffs' claim that the secretary abused his discretion in refusing to modify the agreement to allow the state to disregard punitive damages recovered under N.Y.Soc.Serv.Law § 131–o, neither party has yet prevailed and, in any event, the position of the United States is "substantially justified".

With respect to plaintiffs' claim for waiver of recoupment of the overpayments under 42 U.S.C. § 1383(b)(1) and 20 C.F.R. § 416.550, the plaintiffs argue that because the secretary eventually agreed to waive recoupment, plaintiffs have prevailed on their demand for waiver, and hence are entitled under the EAJA to attorneys' fees, at least with respect to the litigation leading up to the waiver.

Because the plaintiffs were "without fault in connection with the overpayment", 42 U.S.C. § 1383(b)(1)(B)(i), the secretary's decision to recoup the overpayment was not "substantially justified".

An overpaid recipient may be found to be "at fault", and, thus, not entitled to a waiver, for accepting a payment he or she "knew or could have been expected to know was incorrect". 20 C.F.R. § 416.552(c); *see Cohen v. Bowen*, 837 F.2d 582, 584 (2d Cir.1988).

Ahrens and McCabe acted in good faith and reported the settlement they received —both the compensatory and the punitive damages—to the SSA. Although they recognized the possibility of a legal dispute over whether this income was "countable" in determining their eligibility for benefits, they could not have been expected to know that the full payments made by the secretary in February and March 1981 were incorrect. Because the plaintiffs were thus "without fault" and recoupment of the overpayments would "defeat the purposes"

of the Act, the secretary should have waived recoupment. 42 U.S.C. § 1383(b)(1)(B)(i); 20 C.F.R. § 416.550.

Because we find no substantial justification for the secretary's determination that the plaintiffs were "with fault" the plaintiffs are entitled to attorneys' fees under the EAJA with respect to their claim for waiver. The plaintiffs are not entitled to fees generated after the secretary waived recoupment and refunded the money already recouped.

## CONCLUSION

We reverse the district court's dismissal and remand to determine whether the secretary abused his discretion in refusing to modify the agreement. We also remand to the district court to determine appropriate attorneys' fees for that part of the plaintiffs' litigation that led to the secretary's waiver of recoupment of the overpayments.

The judgment of the district court is reversed and remanded.